286

Allen H. Gardner, of Washington, D. C. (George M. Morris and KixMiller, Baar & Morris, all of Washington, D. C., on the briefs), for plaintiff.

James A. Cosgrove, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH,. Chief Justice, and GREEN, WHALEY, WILLIAMS, and LITTLETON, Judges.

GREEN, Judge.

Plaintiff brings this suit to recover certain sums specified in the petition paid at different times on its taxes for 1920, 1921, 1923, and 1924, alleged to have been collected by the defendant in excess of the amount legally due. The issue in the case is whether the plaintiff is entitled to deductions from gross income for the years in controversy on account of payments made for a certain contract with one Christensen, to which reference will hereinafter be made more particularly.

There is no material conflict in the testimony, but the parties dispute as to the inferences and ultimate conclusions that may be drawn therefrom. The evidence shows that the plaintiff is a corporation, and during the time involved in the case was engaged in manufacturing and selling book stitcher-feeding machinery. Its capital stock when organized was divided into 50 shares, of which 25 shares were issued to F. J. Greene, 24 shares to Martin Christensen, and one share to Mrs. Christensen. Some time during the year 1917, the plaintiff's capital stock was increased from $5,000 to $25,000. Greene paid in $10,000 in cash, and Christensen $5,000 or $6,000 in cash, and released a credit due him from the corporation. Each received an additional 100 shares of the capital stock. From the first Christensen was the active figure in the corporation. He originated and perfected the inventions owned by it, directed the manufacture, and made the sales. Greene looked after the company's finances, but was not known to the customers.

In 1920 Christensen and Greene disagreed with reference to the business, and decided to sever relations. On February 21, 1920, a written contract was executed by and between Greene, Christensen, and the corporation under which Christensen sold all of his stock in the plaintiff corporation to Greene, made certain special covenants with reference to the inventions used by the company, and agreed for the period of 5 years not in any way, directly or indirectly, to compete with the business carried on by the corporation. The consideration for his agreement therein was $60,000, which was paid by the corporation.

In making up its returns for the years involved the plaintiff claimed to be entitled to a deduction from gross income for exhaustion of the agreement of Christensen not to compete, allocated pro rata over the years involved. The Commissioner refused to make any deduction on account of the $60,000 paid under the first contract, but did make such an allowance for the amount paid on the second contract not to compete. The case turns upon the question of whether this ruling of the Commissioner was correct.

The defendant practically concedes that such a deduction would be proper if the evidence definitely showed the value of the agreement not to compete contained in the first contract. Specifically it is contended on behalf of the defendant:

First. That, in addition to the contract not to compete, there were other promises, covenants, and agreements made by Christensen to the corporation which had a value which must be ascertained before the cost of the contract not to compete can be determined, and that, as there is no evidence of such value, the court cannot find or determine the cost of the contract not to compete.

Second. That, if it be conceded that the other agreements were merely incidental or had at most merely a nominal value, the cost of the agreement not to compete would be the difference between the total amount paid under the contract and the value of Christensen's stock and financial interests, and there is no satisfactory evidence of such value.

Considering the first contention made on behalf of defendant, it must be conceded there were other promises and agreements made by Christensen in the first contract besides the one not to compete; but we think, as said by the Board of Tax Appeals in determining the same question between the same parties, that (Christensen Machine

Company v. Commissioner, 18 B. T. A. 256): "The other engagements of Christensen were only incidental and precautionary so far as Greene and the petitioner were concerned." The first agreement provided that during the term thereof Christensen should not "directly or indirectly," or "in any manner whatever, engage in the business of manufacturing or selling stitcher-feeding machinery, or machinery or improvements, devices, or attachments of any kind adapted for use in connection with book stitcher-feeding machines which will compete commercially." The agreement not to grant any other person the patent or application on any new invention that would compete with the business of the corporation merely made the agreement before recited more specific, and defined in part the meaning of the words "directly or indirectly." The other agreements appear to be merely precautionary devices, as by them Christensen agreed to do certain things contingent upon the happening of certain events, but there is no evidence that any of these events happened or were likely to happen. Such agreements could have only a nominal value at most. Even if it be conceded that the other agreements had some value, and that there is no evidence from which that value can be found, there is still sufficient evidence for the court to find and determine that their total value was not large enough to make any substantial difference in the way of reducing the income of the corporation when spread over a period of years. De minimis non curat lex. Courts are not powerless to act and prevented from rendering a judgment because the amount thereof can not be determined with precise mathematical accuracy.

Where stock has no established market value and no recent sales or offers to purchase or offers to sell have been made, it is always difficult to determine its value accurately. But, where the nature of the business is shown, its operations described, its profits for several prior years fixed, the amount of its tangible assets known, and the testimony shows the surrounding circumstances which bear on the question of what its profits are likely to be in the future, the court cannot say that there is no evidence of value, but must proceed to determine the value as accurately as it can from the evidence which is before it.

Taking up now the evidence as to the value of the capital stock, we find that the Commissioner of Internal Revenue determined in another proceeding that the fair average value of plaintiff's capital stock for the period of June 30, 1919, to June 30, 1920, was $42,017.67, but we have no knowledge of how the Commissioner arrived at that sum. The average earnings for the years December 31, 1912, to December 31, 1919, inclusive, were only $4,263.03, and, if the value of the stock was computed on that basis, the amount fixed by the Commissioner was, in our opinion, large enough. But from 1915 up to the last of 1918 the corporation was exposed to competition from the Dexter Folding Company, which had a superior machine, and in 1917 the corporation actually had a small deficit. Then Christensen invented a machine which was much superior to the Dexter machine, and in 1918 the profits rose to nearly $4,000, and were $18,731.49 in 1919. But the value of the stock cannot be properly computed on the earnings for 1919. As the Board of Tax Appeals states in its opinion (Christensen Machine Co. v. Commissioner, supra):

"* * * Christensen was leaving. He had been the most important person in the business. He had invented the machines, he had manufactured them and had sold them. Greene knew but little about conducting the business, but before he agreed to the purchase of this stock, which was to make him sole owner of the corporation, he made an extensive investigation to learn just what he would have, how much he could reasonably expect to make out of it and how much the stock was worth."

After making this investigation, Greene concluded that Christensen's stock and his agreement not to compete for 5 years, which he considered "the life of the contract," or, in other words, an essential element of the contract, were worth together $60,000. The Board of Tax Appeals, in its opinion, allocated one-half of the $60,000 to each of the two principal things purchased, or, in other words, concluded that Christensen's stock was worth $30,000 and the agreement not to compete the same amount. As Christensen had half of the stock, the total value thereof would be $60,000. We think this is substantially correct. Counsel for plaintiff have presented an elaborate computation based on the average earnings for all of the years above referred to and capitalizing the return on tangibles at 10 per cent. and on intangibles at 20 per cent. By this computation the value of Christensen's 125 shares is found to be $25,182.12. Deducting this from $60,000 would make the cost of the agreement not to compete $34,817.88. But this calculation, in our opinion, does not make sufficient allow-

ance for the change in the condition of the business of the company brought about by the invention of a superior machine as above stated. Making due allowance for the fact that Christensen was going out of the business on the one hand, and on the other for the fact that a superior machine had been acquired by the corporation, we concur in the finding of the Board of Tax Appeals.

As the contract cost $30,000 and ran for 5 years, at the end of which it would be exhausted, the average deduction for each year would be $6,000.

The amount of taxes due from plaintiff for the years in controversy, when a deduction from gross income is made in accordance with the foregoing opinion, is merely a matter of computation, but no computation has been submitted on the basis of the values which we have fixed therein. The plaintiff is entitled to judgment, but the entry thereof will be withheld until a computation is presented to the court in accordance with the opinion. If the parties agree with reference to the result of the computation, judgment will be entered for the amount so fixed; otherwise the court will have the computation made and judgment entered.

Court of Claims.
June 1, 1931.