B. T. BABBITT, INC. (NEW YORK), AND B. T. BABBITT, INC. (DELAWARE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74047.   Promulgated May 31, 1935.

*Robert C. Poskanzer, Esq.*, for the petitioners.
*F. M. Thompson, Esq.*, for the respondent.

694

**OPINION.**

ARUNDELL: The pleadings herein raise issues as to deductions for depreciation and obsolescence of trade brands and trade-marks, and amortization of contracts to refrain from competition. There is no evidence concerning the basis or rate of exhaustion of the trade brands or trade-marks and we assume that issue has been abandoned by petitioner. See *Norwich Pharmacal Co.*, 30 B. T. A. 326, holding that trade-marks are not susceptible of exhaustion by the passage of time, nor wear and tear by use in the business.

Petitioners' present claim is for deductions for the amortization of the contracts to refrain from competition which were part of the agreements whereby the businesses of competitors were acquired. The theory of petitioners is that the covenants to refrain from competition constituted capital assets which had a limited life and that deductions for exhaustion thereof are allowable under section 23 (k),

Revenue Act of 1928, which provides for the deduction of a " reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." The respondent's position is that the substance of the contracts was to convey to Babbitt the good will of its competitors and that the element of restraint of competition can not be segregated and separately valued.

The decided cases are to the effect that the cost of eliminating competition is a capital asset. Where the restraint or elimination is for a definite and limited term the cost may be exhausted over such term, *Farmers Feed Co.*, 17 B. T. A. 507; *Christensen Machine Co.*, 18 B. T. A. 256, 50 Fed. (2d) 282; *Black River Sand Corporation*, 18 B. T. A. 490; *News Leader Co.*, 18 B. T. A. 1212; *Eitingon-Schild Co.*, 21 B. T. A. 1163; *Eagle Pass & Piedras Negras Bridge Co.*, 23 B. T. A. 1338. On the other hand, where the benefits of restraint or elimination of competition are permanent or of indefinite duration, no deduction for exhaustion is allowable. *Press Publishing Co.*, 17 B. T. A. 452; affirmed as *Newspaper Printing Co.* v. *Commissioner*, 56 Fed. (2d) 125; *Clark Thread Co.*, 28 B. T. A. 1128.

It appears on the face of the contracts here that Babbitt acquired several kinds of property, among others, the business, good will, trade-marks, trade brands, processes, licenses, formulae, and covenants to refrain from competition. If we had nothing but these contracts to go on we would agree with the respondent that a segregation can not be made. We have, however, uncontradicted evidence on this phase of the case dealing with it from two angles, namely, the substantial value of the covenants to refrain from competition and the comparatively minor value of the other properties. Three witnesses testified on this subject. One, a certified public accountant whose experience with Babbitt and other lye concerns dates back to 1916. Another, a manufacturer of cleaning products including lye, who is a competitior of Babbitt, chairman of the Code Authority of the Lye Industry, and has been engaged in the lye business since 1915. The third, a lawyer who has been general counsel and a member of the board of directors of Babbitt since 1923 and negotiated the contracts here involved.

The testimony of these witnesses is that trade brands, trade-marks, or labels are of very little value in the lye industry; formulae are of no value because the formula of each brand is required to be printed on the container. Sales are dependent on price and the personal contact of the producer with wholesalers and jobbers. The testimony is that labels and trade-marks can be changed with but little effect on sales if the contact with wholesalers is maintained by the producer. The primary object of Babbitt in entering into the con-

tracts was to eliminate competition and thus enable it to maintain its sales volume. The testimony is directly to the point that Babbitt would not have purchased the businesses of its competitors without the agreements to refrain from competition.

There is but little range in the testimony of the relative values of the noncompetition agreements and the other properties acquired under the contracts. The highest value placed on any of the covenants to refrain from competition is 90 percent of the entire contract price, and the lowest is 85 percent, assigned by one witness to the Hall covenant. Recognizing that this is not a matter susceptible of exact valuation and that there is room for some variation of opinion as to relative values, we are inclined to accept the lower figure given, 85 percent, as representing the relative value of the covenant to refrain from competition. This percentage in our opinion represents a fair allocation of the price paid under each contract for the restraining covenant, and is to be treated as the cost of such covenant. *Christensen Machine Co.*, *supra*, and *Black River Sand Corporation*, *supra*. As the covenant in each case was for a definite period of years, under the cases above cited, the cost is exhaustible over such periods, namely, 25 years under the Hall contract, 15 years under the Schield contract, and 20 years under the Ford contract.

*Decision will be entered under Rule 50.*