L. M. Brown Abstract Company v. Commissioner. Union Title Company v. Commissioner.
L. M. Brown Abstract Co. v. Commissioner
Docket Nos. 105114, 105115.
United States Tax Court
1943 Tax Ct. Memo LEXIS 475; 1 T.C.M. (CCH) 509; T.C.M. (RIA) 43049; January 30, 1943
*475 Leroy Sanders, Esq., and Charlton N. Carter, C.P.A., 8th Floor, Peoples Bank Bldg., Indianapolis, Ind., for the petitioners. Edward C. Adams, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies as follows for 1937: Excess
Income
Profits
Tax
Tax
L. M. Brown Abstract Com-
pany
$2,037.22
$780.11
Union Title Company
2,158.27
The only issue presented is whether the petitioners are entitled to deductions taken by them as losses sustained on certain abstract records purchased in 1931 and voluntarily destroyed in 1937. Findings of Fact L. M. Brown Abstract Company, sometimes hereafter referred to as Brown, and Union Title Company, sometimes referred to as Union, are Indiana corporations, with their principal places of business in Indianapolis. The former was organized in July 1926 and the latter in December 1924. At all times material herein they have been engaged in the business of abstracting titles. They filed their respective income tax returns for 1937 with the collector at Indianapolis. At the time of its organization Union acquired the abstract records of five abstract companies *476 which in turn had acquired the records of previously existing companies. As a result of said various acquisitions the abstract plant of Union is the embodiment of the records of ten or more companies. An abstract plant consists of a number of integral parts the most important of which are the tract indexes. Postings to the tract indexes are made from the day book, while entries in the latter are made from the court records. Prior to World War I, the father of Maurice Thompson kept day books from court records. After his father's death Thompson continued to maintain the day books, making postings thereto from day to day from the court records. As among the abstractors of the various title companies, Thompson operated as a "lone wolf." His records did not represent a complete abstract plant but consisted only of day books, without any tract indexes. He operated under the name of The Indianapolis Title Company and made very few abstracts at any time. He was not regarded as a competitor by either Brown or Union. In the early part of 1931, Brown, Union and Thompson were the only interests doing a title business in Marion County in which Indianapolis is located. Business was bad and *477 it was felt that Brown and Union could not continue to operate separately at a profit. Some of the directors of Union began negotiations with some of the directors of Brown for a merger of the assets and business of the two companies into a new corporation. The negotiations reached the point where the general principles of a plan of merger were agreed upon on condition that a legal method be found for working out the details. It was thought, however, that if Union and Brown were merged into one big company, any group desiring to start a competing company could acquire the Thompson records as the basis of an abstract plant, and holding themselves out as the owners of the abstract plant formerly owned by Thompson, might give the merged company some tough competition. To eliminate such a possibility and to prevent anyone who might become a competitor from acquiring the Thompson records, Union and Brown, with knowledge of the character of such records, purchased them in April 1931 for $18,000. Of that amount 40 per cent or $7,200 was paid by Brown and 60 per cent or $10,800 was paid by Union. Said amounts were treated as capital items by petitioners on their books. The records thus purchased *478 were in one corner of a room in Thompson's place of business. Representatives of the petitioners' looked them over, had them placed in two boxes, had the boxes nailed up and then had the boxes delivered across the street to the building in which Union had its place of business. On that or the following day the boxes still unopened were placed in storage in Union's vault in the basement of the building. This vault was used by Union for the storage of its surplus paper supply and for the storage of old records which it was thought would not be used again. The current records were kept in another vault upstairs. The Thompson records remained stored, unused, and unopened in the basement vault until December 30, 1937. Although the petitioners acquired the records previously used by Thompson in his abstract business he has continued to do some abstract work. The proposed merger of Union and Brown was never carried out for some undisclosed reason or reasons. After it was determined that the merger would not be effected the officials of Union decided that when Union had the money and the employees available, the Thompson records would be compared with the posted tract indexes of Union. In *479 the opinion of the president of Union this would mean an outlay of $10,000 or $15,000 but would make them of use in Union's business. From 1931 to the fall of 1933 the abstracting business was very inactive. During this period it was with difficulty that Union kept from operating at a loss and comparison of the Thompson records was not made during that period. Beginning with the fall of 1933 and continuing until the end of 1936 and as a result of the passage of the Home Owners Loan Corporation Act and other legislation the title business became so active that Union was unable to find a sufficient number of competent employees and had to train help for its work. Despite the fact that this was a very active period for Union it began certain projects or undertakings for the betterment of its abstract plant but these activities did not include the comparing of the Thompson records with the records being used. Instead Union's president decided in 1936 that Union would not pay out the additional money required for making the comparison and in view of the rush of business and the need of employees for work on tax searches and work for Home Owners Loan Corporation the matter would not be *480 considered further. Union thereupon concluded that the Thompson records and certain other records not then in use should be destroyed. The minutes of the meeting of the executive committee of the board of directors of Union held on November 10, 1936, contain the following: Mr. Coval [president of Union] reported that the files and vaults of the company were considerably crowded by reason of the accumulation of different records and suggested that the old books formerly belonging to W. W. Knapp, A. B. Cole and William Thompson were obsolete and could not be used in the company's business. He suggested that said records be destroyed to make more room for current files, destruction of the Thompson plant being contingent upon procuring consent from the L. M. Brown Abstract Company which owns an interest in said plant. After discussion it was decided that the Executive Committee recommend to the Board of Directors at its next meeting that said obsolete and unnecessary records be destroyed. The minutes of the regular meeting of Union's board of directors held on December 8, 1936, show the following: After consideration of the recommendation adopted by the Executive Committee at its meeting *481 November 10th Mr. Forrey moved that the obsolete and unnecessary records of the plants of A. B. Cole and W. W. Knapp be destroyed to save filing space and that the similar records of the William Thompson plant be destroyed upon procuring the approval of the L. M. Brown Abstract Company, the destruction of said records to be carried out in the presence of two of the three officers of the company. Said motion was seconded and unanimously carried. The minutes of the regular meeting of the Union's board of directors held on December 14, 1937, read in part as follows: Mr. Bristor reported that after careful investigation by the officers of the Union Title Company and of the L. M. Brown Abstract Company, joint owners of the Thompson Abstract Plant, they had determined the plant to be no longer of any service to the company, and recommended that the same be abandoned and destroyed. He thereupon presented the following resolution, and moved its adoption which motion was seconded by Mr. Forrey and unanimously carried. RESOLUTION WHEREAS the Board of Directors have heretofore instructed the Officers of the Company to ascertain which, if any, of the records of the William Thompson or Indianapolis *482 Title Company Plant were unnecessary, and of no further value to the Company, in order that same might be destroyed, provided that joint approval of such destruction be obtained from the L. M. Brown Abstract Company, a joint owner of such records, and, WHEREAS the Officers of the Company have reported that since said time they have carefully checked the records contained in the Thompson Plant and have found that all of such records are obsolete and of no further value to this Company; and the L. M. Brown Abstract Company has indicated its approval of such finding and has authorized the destruction of said Plant for said reasons. NOW THEREFORE, BE IT RESOLVED that the Officers of this Company immediately proceed, in conjunction with representatives of the L. M. Brown Abstract Company, to destroy said Thompson Plant and the records therein contained. On December 30, 1937, a representative of Union and a representative of Brown opened the boxes containing the Thompson records and after casually examining them to be sure that they were the Thompson records burned them in a furnace. The amounts paid by the respective petitioners for such records were there-upon charged off by them on *483 their books. In their income tax returns for 1937 Brown and Union took deductions of $7,200 and $10,800, respectively, as losses sustained on the Thompson records. In determining the deficiencies involved herein the respondent disallowed the deductions claimed. Opinion The petitioners contend that in the purchase of the Thompson records they did not acquire or consider that they were acquiring any of Thompson's customers or business; that since the records were never used by them and none of the information contained in them was retained, they derived no benefits there-from; that at the time of their destruction in 1937 the records had not depreciated or become obsolete but were as valuable as when purchased in 1931; and that the destruction of the records in 1937 under the circumstances stated in our findings of fact resulted in deductible losses in the amounts of their respective investments therein. The respondent contends, among other things, that the records were acquired by the petitioners for the purpose of eliminating competition and that the deductions claimed are not therefore allowable. The facts of record support the claim of the respondent. In 1931 Brown and Union *484 were planning a merger. Except for Thompson, whom they did not regard as a competitor, they were the only interests doing a title business in Indianapolis and vicinity. While Thompson's records consisted only of day books which fell far short of being a complete abstract plant, the petitioners realized that such books could furnish a foundation on which to build an abstract plant, and in order to eliminate the possibility of competition which might arise from the ownership of such books by someone other than Thompson, decided to purchase them. The books were never thereafter used but were destroyed in 1937, even though their value was the same when they were destroyed in 1937 as when they were purchased in 1931. The cost of eliminating competition is a capital outlay, B. T. Babbitt, Inc., 32 B.T.A. 693, and while the burning of the records in instant case brought about their complete and permanent destruction, the benefit from the purchase was not destroyed but rather its continued existence was assured. The petitioners sustained no deductible loss in 1937 on account of the destruction of the Thompson records, and the respondent's action in disallowing *485 the deductions claimed is sustained. Decisions will be entered under Rule 50.