**Carl DAUKSCH, Plaintiff,**

v.

**Harry F. BUSEY, Collector of Internal Revenue, Defendant.**

**No. 2928.**

United States District Court,
S. D. Ohio, E. D.

Aug. 13, 1954.

John Caren and Dargusch, Caren, Greek & King, Columbus, Ohio, for plaintiff.

Hugh K. Martin, U. S. Atty., Columbus, Ohio, for defendant.

CECIL, District Judge.

This action is brought by Carl Dauksch, plaintiff, against Harry F. Busey, Collector of Internal Revenue, to recover from the United States, the sum of $15,533.16, together with interest. The amount claimed arises out of deficiencies assessed by the defendant against the plaintiff on his income tax returns for the years 1945, 1946 and 1947. The deficiencies thus assessed were paid by the plaintiff and he made a claim for their return, which was rejected by the Commissioner of Internal Revenue.

The facts are set forth in detail in a separate Findings of Fact and Conclusions of Law filed herewith.

In the early 1920's, H. S. Atkinson began an insurance and bonding business. In 1929, the plaintiff was employed in this business by Mr. Atkinson. In 1938, the two men became limited partners, the plaintiff herein sharing to the extent of forty percent of the profits, and in 1943, they became equal partners in the business. The business was op-

erated under the name of the Atkinson-Dauksch Agencies.

In November, 1944, Mr. Atkinson, at the age of 57, suffered a cerebral hemorrhage and became incapacitated. By agreement (plaintiff's Exhibit 2) effective June 30, 1945, entered into, after arms-lengths dealings between the two parties, the plaintiff herein purchased the partnership interest of Mr. Atkinson. The total consideration for this contract was $37,500. Five thousand dollars of this amount was for Mr. Atkinson's current investment in the business; $7,500 was for Mr. Atkinson's share of the partnership including good will and the right to continue the use of the name; $25,000 was for a covenant from Mr. Atkinson and his wife not to engage in the insurance business in Franklin County, Ohio, for a term of five years.

In October, 1945, the plaintiff entered into an agreement (plaintiff's Exhibit 2B) with O. M. Heffner and his wife, whereby the insurance agency of Mr. Heffner was purchased for a sum of $15,000. This contract included the office furniture, fixtures, supplies and equipment, the good will of the business, the right to use the name O. M. Heffner and the covenant on the part of Mr. Heffner and his wife to not again enter into the insurance business for a period of 39 months.

In the income tax returns in question, the plaintiff proceeded to depreciate the $25,000 set forth in the Atkinson contract as the value of the agreement not to compete in the business ratably over the five year period for which the covenant was to be in effect.

The Heffner contract provided that the plaintiff was to pay to Mr. Heffner, $3,000 on or before October 1, 1945; $4,000 on or before January 10, 1946; $4,000 on or before January 10, 1947, and $4,000 on or before January 10, 1948.

With the assistance of his accountant, Mr. Dauksch entered on his own books a division of the Heffner contract as follows: $2,500 to the cost of the good will of the business and of certain fire maps; $500 to the cost of furniture and fixtures and $12,000 to the cost of Heffner's agreement to work with him and not to compete with him. On the basis of this division, the plaintiff set up depreciation on the questioned income tax returns against the $12,000 for the covenant not to compete, as follows: In 1945, $923.08; in 1946, $3,692.28 and in 1947, $3,692.28. These items of depreciation were disallowed by the Commissioner.

The question arises as to whether or not the plaintiff is entitled to any deductions for this depreciation under Section 23(*l*)(1), 26 U.S.C.A. This section provides for a reasonable depreciation allowance for the exhaustion, wear and tear of property used in the trade or business. In accordance with this provision, the Commissioner of Internal Revenue has adopted a regulation as follows:

"Sec. 29.23(1)–3. Depreciation of intangible property.—Intangibles, the use of which in the trade or business or in the production of income is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade or in the production of income is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business or in the production of income for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner. No deduction for depreciation, including obsolescence, is allowable in respect of good will."

Counsel for plaintiff claim, and counsel for defendant deny that it is a well accepted general rule that a buyer of a business may depreciate a covenant not

to compete given to him by the seller. This rule was adopted by the Court of Claims as early as 1931 in the case of Christensen Machine Co. v. United States, Ct.Cl., 50 F.2d 282. "Taxpayer held entitled to deduction from gross income for exhaustion of agreement not to compete, regardless of other promises and agreements in contract." First Syllabus.

The rule is also recognized in Horton v. Commissioner of Internal Revenue, 13 T.C. 143. See also B. T. Babbitt, Inc. v. Commissioner of Internal Revenue, 32 B.T.A. 693.

The general rule is recognized in the case of the Toledo Blade Co. v. Commissioner of Internal Revenue, 11 T.C. 1079, which case counsel for defendant claim to be decisive of the issues in the case at bar. At page 1086 of 11 T.C., it is stated in the opinion that the court reach the conclusion "that it was not divisible." The concluding paragraph in the decision is "On the evidence in the instant case, we cannot find that any of the assets which the petitioner acquired under the control in question, had a definite cost which the petitioner is entitled to recover through amortization or depreciation taxes". This same rule is recognized by the Tenth Circuit, United States Court of Appeals as late as January 30, 1954. Commissioner of Internal Revenue v. Gazette Tel. Co., 209 F.2d 926, 928.

The Court is of the opinion that the question of whether or not the plaintiff should be allowed to take depreciation on the Atkinson and Heffner contracts in this case is a question of Fact. The two views are well summed up in the opinion in the Gazette case just cited.

"Section 23(l) of the Internal Revenue Code, 26 U.S.C. § 23(l), provides in substance that in computing net income there shall be allowed as a deduction a reasonable amount for the exhaustion, wear, and tear of property used in trade or business. Section 29.23(1)1–3 of Treasury Regulation 111 was promulgated under the statute and is in harmony with it. Where a lump sum is paid for the properties of a going business together with intangibles and a covenant on the part of the seller not to compete with the purchaser or his assignee for a specified period of time, and the covenant against competition is not treated separately in respect to cost and value but is nonseverable, the purchaser has no warrant in the statute or the regulation to treat any part of the price paid as the cost of the covenant subject to depreciation. Toledo Blade Co. v. C. I. R., 11 T.C. 1079, affirmed, 6 Cir., 180 F.2d 357, certiorari denied 340 U.S. 811, 71 S.Ct. 38, 95 L.Ed. 596; Burke, 18 T.C. 77. On the other hand, in a transaction in which property is sold and the seller covenants not to engage in business in competition with the purchaser for a specified period of time, if the parties in good faith and realistically treat the covenant in a separate and severable manner in respect to value and cost the purchaser may amortize the price paid for the covenant and claim annual deductions pro rata during the life of the covenant. Farmers Feed Company of New York, 17 B.T.A. 507; Christensen Machine Co., 18 B.T.A. 256; Eitingon-Schild Co., Inc., and Subsidiaries, 21 B.T.A. 1163; B. T. Babbitt, Inc., 32 B.T.A. 693; Christensen Machine Co. v. United States, Ct.Cl., 50 F.2d 282."

Considering the case at bar in the light of the Gazette case, the Court is of the opinion that the plaintiff should be entitled to depreciation in the Atkinson case and be denied it in the Heffner case. There is no evidence that the transaction between Atkinson and Dauksch was not a bona fide one or that there was any fraud practiced between them in the execution of the agreement with the intent of evading taxes to the Government. The evidence discloses that a large part of the business of the Atkinson-Dauksch agency had been built up by Mr. Atkinson and was personal to him. A large part of this business consisted of bonding contractors, which was not renewable business. Mr. Atkinson was an unusually personable individual. While he was severely stricken in November of 1944,

he made great progress in recovery. The evidence shows that on January 1, 1950, he attended the Rose Bowl Football game in California. He went on this trip with Mr. Lloyd Bland Stradley, the Vice-President of Ohio State University and very largely took care of himself while on the trip. He did not die until 1952.

The Court is of the opinion from the evidence that it was not only possible, but probable, that Mr. Atkinson might have engaged in the insurance business during the later years of his life, had it not been for the covenant not to compete. The $25,000 set forth in the contract as the value of the covenant not to compete, is not disproportionate to the amount of business done by the agency. As shown from the record P. 81, the gross income from the personal customers of Mr. Atkinson between the years 1940 and 1944 inclusive, ranged from $128,984. to $346,629. The partners were free to bargain in such manner as they pleased. They had a right to ascribe such value to the various items of the contract as in their judgment seemed proper. "Generally taxpayer has legal right to decrease amount of what otherwise would be his taxes, or altogether avoid them, by means which law permits, and taxpayer's motive to avoid taxation will not establish liability if transaction does not do so without it." Chamberlin v. Commissioner of Internal Revenue, 6 Cir., 207 F.2d 462, 463.

The Government attacks the value ascribed to the covenant not to compete, but it has offered no evidence to show that its value was less than that claimed by the partners. The partners themselves made a severable contract and the Court is of the opinion that the items were of a severable nature.

The Government raises as an alternative question that even though the contract were a severable one, the value ascribed to the covenant not to compete is excessive. As stated above, there is no evidence to show that the amount was excessive.

There is not much to be said in connection with the Heffner contract. The parties themselves did not treat the covenant not to compete, separately from the item of good will and the tangible assets of the business. There seems, therefore, to be "no warrant in the statute or regulation to treat any part of the price paid as the cost of the covenant subject to depreciation." It comes within the decision of Toledo Blade Co. v. C. I. R., 11 T.C. 1079 heretofore cited and affirmed by the Sixth Circuit in 180 F.2d 357.

The third item of deficiencies which was assessed against the plaintiff consisted of entertainment expenses which were claimed by the plaintiff and set up in his income tax returns for the years in question.

In the year 1945, the plaintiff claimed a total of $2,500 for entertainment expenses; $1,552.10 of this amount was disallowed by the Commissioner.

In 1946, he claimed a total of $2,546.20, of which $1,200 was disallowed.

For the year 1947, $3,671.36 was claimed as entertainment expenses, of which $1,267.36 was disallowed.

The Court is of the opinion that the Commissioner was justified in disallowing these amounts for the reason that the plaintiff has no substantial way of verifying them.

The plaintiff claimed that this was "out-of-pocket" money. He stated, P. 96 of the record: "And if I run into a customer in the late afternoon and buy him a cocktail or sometimes go to the theatre, many things that you do during the course of the normal day, which primarily is lunches and dinners, that is the most of it. It comes out of the pocket. I have no expense records of that type of thing. I do have some idea of approximately what I am spending per month, and I keep a little mental reservation on it and then at the end of the year I put into my tax return that which I think is fair as to the amount that I have spent out-of-pocket."

On cross-examination, the plaintiff stated that he made a mental calculation at the end of each month and then when he made out his tax return, he recalled and summarized the twelve monthly estimates previously made.

The Court is of the opinion that the Commissioner allowed a generous amount for entertainment expenses. It is not required that the plaintiff should keep meticulously accurate records of such expenses or that he should get receipts upon every occasion.

The Court is of the opinion that the plaintiff has failed to prove by a preponderance of the evidence that he is entitled to the entertainment expenses disallowed by the Commissioner or any part of it.

Judgment will be granted to the plaintiff for such an amount as he is entitled to by reason of the Commissioner's disallowance of the depreciation in the Atkinson contract. The parties will calculate this amount and submit it to the Court.

A Judgment Order may be drawn accordingly.