RALPH E. DUNCAN AND ANNE M. DUNCAN, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64901.   Filed May 28, 1958.

*James P. Tierney, Esq.*, for the petitioners.
*Claude R. Sanders, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in the petitioners' income tax for the year 1953 in the amount of $2,083.88. The issue is whether certain expenses incurred by petitioners on a trip to Europe are deductible by them as ordinary and necessary business expenses under section 23 (a) of the Internal Revenue Code of 1939.   Several items have been conceded by the parties and effect will be given to such concessions in the Rule 50 computation.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are so found.

Ralph E. and Anne M. Duncan, husband and wife, are residents of Kansas City, Missouri.   They filed their joint income tax return for the year 1953 with the district director of internal revenue at Kansas City, Missouri.   Ralph E. Duncan, hereinafter called the petitioner, is a physician, and he and his wife operate, as a partnership, the Ralph Sanitarium, which is engaged in the treatment of alcoholism.   Petitioner's wife manages the food and general housekeeping problems of the sanitarium and, to a limited extent, assists in patient therapy.

In 1953 William E. Kemp, then mayor of Kansas City, Missouri, decided to travel to Europe to attend, as the American delegate, an international mayors' conference in Vienna, and also to visit, as an official guest, the cities of Nottingham, England, and Strasbourg, France.   A proposed itinerary for Kemp was prepared by Lois Walker, a travel agent in Kansas City.   The itinerary included seats for the coronation, a visit with the Lord Mayor of London, visits to cathedrals and museums, tickets to the Follies in Paris, the opera in Rome, trips to the flower market in Amsterdam, the Alps, and the

beach at Capri. Lois Walker named the trip the "Coronation Tour" and she made an unsuccessful attempt to interest others in going on this tour. The proposed itinerary included a guide throughout Europe and a complete sightseeing program.

Petitioner and his wife, who had known Kemp and his wife for almost 30 years, expressed interest in the tour and they decided to go with Kemp and his wife and thereafter they joined with the Kemps in making further plans and changes in the itinerary. When a final decision had been reached as to the itinerary, Lois Walker attended to all the details of the trip, arranging for steamship space, hotel reservations, coronation tickets, a limousine and chauffeur in Europe, and other items. The itinerary included visits to England, Wales, Scotland, Holland, Belgium, Germany, Austria, Italy, and France. Lois Walker contacted three foreign travel agencies which arranged the tour on the basis of the itinerary planned by petitioner and his wife, together with the Kemps. Lois Walker paid the foreign agencies for these arrangements and then charged the costs to petitioners and the Kemps. Petitioners paid their share of the costs of the trip to Lois Walker before their departure. Petitioners also arranged to take a "package" tour of Spain, the details of which were handled by Lois Walker through another foreign travel agency. Lois Walker handled the charges for the Spanish tour in the same manner as the charges for the rest of the trip.

Petitioner and his wife, prior to their departure, were given exchange orders prepared by Lois Walker and based on the itinerary which had been arranged by the foreign travel agencies. These orders were used in lieu of cash and were an order on the foreign travel agents to deliver the services previously arranged and paid for. Upon arrival in Europe petitioner and his wife surrendered the exchange orders to the foreign travel agents and received in return all necessary tickets and coupons. In Zurich petitioners canceled about 18 days of the original arrangements and made other plans with one of the foreign travel agencies, which resulted in additional costs. This cancellation of a portion of the itinerary did not result in a refund. The new itinerary provided for 3 days in Nice, 3 days in Geneva, 1 week in Rome, and 1 week in Paris, and, in addition, provided for a 2-day sightseeing tour of Rome, a sightseeing tour by private car with chauffeur in Geneva, and a trip by steamer on the Lake of Geneva. No refunds or credits were made by any of the foreign travel agencies to Lois Walker or to the petitioners because of failure to take any part of the planned tour.

Petitioner is a commanding officer and a compensated instructor of a Naval Reserve Medical Unit. Prior to the contemplated trip he requested permission from the Navy Department to go abroad, and in his letter, under date of April 10, 1953, he stated that "[t]he pur-

pose of my trip is to visit various hospitals, clinics and with persons to obtain first hand information in reference to the subject of alcoholism." After the trip in 1953 the petitioner used some of the information gained on the trip in articles and textual materials.

William E. Kemp's wife died in London and he did not accompany petitioner and his wife on the rest of the trip.

Petitioner and his wife spent a total of 85 days on their trip, out of which 56 days were devoted to travel. Petitioner and his wife visited the following places and engaged in the following activities: They arrived in England on May 18 and embarked on an extensive tour of Great Britain by limousine, traveling through Wales, Scotland, and England. They visited, among other places, the University of Oxford, Stratford-on-Avon, and Warwick Castle; they drove through the countryside of Wales, making a side trip to Holyhead, Wales, on the Irish Sea; they visited the homes of Coleridge and Shelley, and they spent 1 day in the lake district of Northern England; in Scotland they visited Loch Lomond and Loch Katrine, and in Edinburgh they visited Edinburgh Castle, Holyrood Palace, St. Andrews Cathedral, and other churches; returning to England they visited the ruins of Melrose Abbey and made a side trip to Coventry; on June 2, in London, they viewed the Coronation Parade from reserved seats in Whitehall; they arrived in Holland on June 6 and while in Amsterdam visited Volendam, the Isle of Marken, the Hague, tulip fields, and Zuider Newland; en route to Brussels they inspected a pottery factory and also stopped at the Cathedral of St. Bavon; at Coblenz they boarded a Rhine Steamer for Wiesbaden, and after leaving Wiesbaden they traveled through Frankfort and Heidelberg; in Vienna the petitioner attended the International Mayors' Convention as a delegate (substituting for Mayor Kemp); in Rome the petitioner and his wife visited the Colosseum, the Forum, St. Peter's Cathedral, and the Vatican, where they had an audience with the Pope; they spent 3 days in Nice on the French Riviera; in Geneva, Switzerland, the petitioner and his wife took a trip by steamer on the Lake of Geneva; in Paris they visited the Louvre, the Cathedral of Notre Dame, the Eiffel Tower, Napoleon's Tomb, the Montmartre District, the Arch of Triumph, Tomb of the Unknown Soldier, and the Cathedral of Sacre Coeur; they also traveled to Fontainbleu and visited the Palace of Versailles; petitioner and his wife flew from Paris to Barcelona and then traveled by ship to Palma, on the Island of Majorca; where they spent 4 days; they returned by ship to Spain where they proceeded by bus on a package sightseeing tour through the principal cities.

At various places during the trip the petitioner contacted persons in the medical field and visited hospitals and health institutions. He visited the University Hospital in Edinburgh and talked with depart-

ment heads, nurses, and the Dean, and he also visited the library and attended a lecture at the Royal College of Physicians. He visited hospital departments in Nottingham. In London he visited the following hospitals: Guy's, St. Bartholomew's, Worlingham Park, and two others. While in London he also visited a society on alcohol and drug addiction. He visited a hospital in Amsterdam, and in Vienna he visited the General Hospital where he observed methods of group therapy and the use of sedatives. In Rome he went to a Government hospital, a private hospital, and the University of Rome. In Switzerland he talked to a professor of neuropsychiatry and he also visited two libraries. In Lausanne he visited the medical quarters of the International Bureau Against Alcoholism and inspected its library on alcoholism. In Madrid he visited a medical school. In Paris he visited the Pasteur Institute to observe research work in areas not related to alcoholism, and he talked to doctors at the American Hospital. In many of these visits the petitioner was especially interested in the subject of alcoholism and its treatment.

Petitioner and his wife filed a partnership return of income with the district director of internal revenue at Kansas City, Missouri, for the year 1953 and on such return claimed a deduction of $11,169.27 as travel expenses. Of this amount, $8,396.36 represented expenses of petitioner and his wife on the trip to Europe. Respondent, in his notice of deficiency, disallowed this deduction in the amount of $8,396.36. On the European trip petitioner and his wife expended a total of $9,371.36 but concede that $1,290 out of this total represents nondeductible personal expenses. It is also conceded that an item "Remembrances to employees" in the amount of $200 is not deductible. The remaining amount, $7,881.36, which is claimed by the petitioner and his wife as a deduction is made up of the following amounts:

| | | |
|---|---:|---:|
| Transportation to Europe and return | $2,203.06 | |
| Transportation, hotels, meals, and services: | | |
| England | 1,100.00 | |
| On the continent, except Spain | 1,728.30 | |
| Spain | 440.00 | $5,471.36 |
| | | |
| Entertainment of guests | $1,900.00 | |
| Taxis | 475.00 | |
| Tips | 520.00 | |
| Post cards mailed to patients and doctors | 575.00 | |
| Extra transportation and baggage charges | 230.00 | $3,700.00 |
| | | |
| | | 9,171.36 |
| Less amount conceded by petitioners to be nondeductible | | [1] 1,290.00 |
| | | |
| Total amount in issue | | 7,881.36 |

[1] Petitioners allocated, as personal nondeductible expenditures, $975 out of the $1,900 "Entertainment of guests" items, and $315 out of the total travel expenses while in Europe.

Out of the total expenditures made by the petitioner on the European trip, the amount of $775 was an ordinary and necessary business expense. The expenditures of the petitioner's wife on this trip were personal in nature.

### OPINION.

Petitioner contends that the expenses of the European trip taken by him and his wife are deductible as ordinary and necessary business expenses under section 23 (a) (1) (A). Respondent has disallowed such deduction on the ground that the expenses were personal in nature and, therefore, nondeductible under section 24 (a) (1).

Whether or not the claimed deduction qualifies as an ordinary and necessary business expense is a factual question. *Commissioner* v. *Heininger*, 320 U. S. 467. The European trip lasted 85 days, out of which 56 days were spent in travel between various places of interest. The itinerary covered by petitioner and his wife was arranged to cover most of the prominent sightseeing places of England and the continent, ranging from the lake district of Scotland to the Island of Majorca in the Mediterranean. The trip was planned together with Kemp and his wife, who were old friends of the petitioner and his wife, and when a final itinerary was chosen, the details were worked out by a travel agent who made all arrangements with foreign travel agencies. The itinerary as planned, with changes not material here, was faithfully followed.

We think that the motivation, planning, and itinerary all show that this was to be a sightseeing trip and intended primarily as a pleasure trip.

Petitioner seeks to categorize the bulk of this trip as a "field trip" undertaken by him, as a physician specializing in the treatment of alcoholics, to study various phases of alcoholism. Petitioner's testimony in this respect was vague and unsatisfactory. He testified that he visited hospitals and other health institutions at the various places on his itinerary; that he spoke to doctors who had some connection with the field of alcoholism; and that he attended a lecture or two on medical matters. It does not appear that he made any preliminary arrangements for such visits and we cannot tell from the record, with any kind of accuracy, how much time was spent on the visits or what he did on such visits. He was vague on names and he was unable to give a satisfactory account of the nature of some of the conversations. Many of the contacts mentioned by the petitioner were obviously unrelated to any purported "field study" of his specialty. Some of the petitioner's testimony with respect to

the length of stay at a particular place, was faulty. In brief, we cannot agree with the petitioner, after a study of the record, that the trip was for the most part a "field study" to study alcoholism. We think that many of the visits by petitioner were made as a result of natural curiosity and interest on the part of any professional person who, while on tour, comes across items that have some link with his profession.

There is, however, some evidence that petitioner did make some direct effort to look into some of the problems in his specialty and that he did make a few visits with the express purpose of gaining information on the treatment of alcoholism. While the evidence on this is far from satisfactory, we are persuaded that the sum of $200 was incurred by the petitioner in visits that were directly related to his business and we hold that such amount is deductible as an ordinary and necessary business expense under section 23 (a) (1) (A). *Cohan* v. *Commissioner*, 39 F. 2d 540.

It is clear from all the evidence that the presence of the petitioner's wife on the trip had no connection with the business purpose. Her duties with the clinic, which was operated by the petitioner and his wife as a partnership, were, for the most part, of a general housekeeping nature. She was not a physician or nurse. It is evident that any expenditures made by her on the European trip were personal in nature and, therefore, nondeductible under section 24 (a). *L. L. Moorman*, 26 T. C. 666.

There is an expenditure made by the petitioner on the European trip which we feel should be treated separately. Petitioner claims a deduction for post cards mailed to patients and doctors and other business contacts in the amount of $575. The evidence shows petitioners took with them mailing lists which contained the names and addresses of hundreds of doctors, hospital administrators, and other persons. Each name and address was in a perforated square with gummed back so they could be detached and pasted on a post card. They also took with them a rubber stamp in which letters could be arranged for a short message to be stamped on all of the post cards. The evidence is that petitioners made 21 separate mailings of form post cards to 700 referring doctors, patients, and other business contacts at a cost, including postage, of $575. We think that this item is clearly an advertising expenditure in connection with the clinic operated by the petitioner and his wife. We hold that such amount is deductible as an ordinary and necessary business expense.

*Decision will be entered under Rule 50.*