**Ralph E. DUNCAN and Anne M. Duncan,
Plaintiffs,**

v.

**Edwin O. BOOKWALTER, Defendant.**

**No. 12832-2.**

United States District Court
W. D. Missouri, W. D.

April 8, 1963.

Robert L. Jackson, Kansas City, Mo., for plaintiffs.

F. Russell Millin, Dist. Atty., Kansas City, Mo., and Robt. W. Ryan, Jr., Department of Justice, Washington, D. C., for defendant.

GIBSON, Chief Judge.

The above-entitled cause came on regularly for trial and the Court having duly considered the evidence and being fully advised in the premises now finds the following:

## FINDINGS OF FACT

1. Dr. Ralph E. Duncan and Anne M. Duncan are husband and wife, residing in Kansas City, Jackson County, Missouri, and they filed their joint income tax return for the taxable year 1956 with the District Director of Internal Revenue at Kansas City, Missouri, and reported thereon a partnership operating loss claimed to have been incurred by them as co-partners operating Ralph Clinic in Kansas City, Missouri.

2. Prior to the calendar year 1956 the plaintiff, Ralph E. Duncan, was a licensed medical doctor, specializing in general pathology, with a further specialization in the field of alcohol addiction, and has been continuously engaged since 1933 as the medical director of Ralph Clinic, which has been located in Kansas City, Missouri, since 1897. Dr. Duncan acquired the physical properties from the estate of his uncle, Dr. Benjamin B. Ralph, during 1933 and operated these facilities as an individual for a period of time until a partnership was formed with his wife, Anne M. Duncan, which situation existed during 1956.

3. Dr. Duncan prior to 1951 operated the Duncan Laboratories, which was devoted to pathological studies for various hospitals and physicians in the Midwest, with offices at Kansas City, Missouri, and Joplin, Missouri. Dr. Duncan's activities in the field of medicine commenced with proper college background and internship, coupled with medical service in World War I in the United States Navy, and he continued as a mem-

ber of the U. S. Naval Medical Reserve until he was retired with the rank of Captain, having seen four years of active service during World War II.

4. From 1933 to 1963 Dr. Duncan has supervised the treatment of alcoholic and narcotic addicted patients at Ralph Clinic with the continuous and daily assistance from his wife, Anne M. Duncan, in the operation of the Clinic, which continued until 1958, at which time Mrs. Duncan suffered a heart attack. Mrs. Duncan's duties revolved around the physical maintenance of the institution, including the supervision of the housekeeping and the nursing of patients with, of course, the assistance of registered nurses and licensed medical doctors, and in addition thereto, Mrs. Duncan continuously during the period 1933 through 1956, the year involved in the instant case, was the principal contact for the Clinic with the relatives or friends of the patients. After Mrs. Duncan suffered a heart attack in 1958 a registered nurse, Mrs. Thien, took over these contacts and the duties for the purpose of maintaining a communication with the patients and their relatives and friends. Mrs. Duncan's services were valuable in the treatment and care of the patients of the Clinic.

5. During 1951 Dr. Duncan disposed of his financial interest in the Duncan Laboratories, and thereafter, and up to the present time, Dr. Duncan has devoted his full time and effort to the field of alcoholism, with some attention given to the field of narcotic addiction, which has in recent years been almost completely eliminated from treatment at Ralph Clinic.

6. Prior to 1956 and up to the present time the hospital facilities for the treatment of acute and chronic alcoholism in the Kansas City metropolitan area, as well as in the Midwest area, has been completely inadequate, and the number of doctors who would accept alcoholics as patients has been, likewise, completely inadequate, considering the seriousness and prevalence of alcoholism as a disease. In the Kansas City area, with the exception of the so-called psycho wards at the Kansas City General Hospital and two or three other private hospitals, Ralph Clinic has been the only community hospital for the treatment of alcoholism, and Dr. Duncan has been during this period of time the only medical doctor conceded by the general medical profession and persons knowledgeable in the field of alcoholism to be a medical expert in the treatment of acute and chronic alcoholism.

7. Alcoholism and the care and treatment of acute and chronic alcoholism has been and is an area which until recent years has not received its proper share of attention from the medical profession, hospitals, and governmental bodies. During this time, Dr. Duncan has almost single-handedly in the Kansas City area devoted his full time and effort as a sincere specialist in this field. The medical profession generally has avoided the care and treatment of acute and chronic alcoholics as vexing, financially unrewarding, and personally distasteful. Because of his patent interest in the problem and his specialized knowledge, Dr. Duncan has become the recognized and outstanding consultant and leader on this subject among the medical profession, who have used Dr. Duncan as the specialist to whom they send such cases.

8. During 1953 Dr. Duncan made a trip to Europe and during this trip made certain studies and visits at European clinics in the field of alcoholism, and only the expenses attributable thereto were held to be ordinary and necessary business expense under § 23(a) (1) (A), I.R.C.1939, in Duncan v. Commissioner, 30 T.C. 386, 391. The expense of travel from the United States to Europe was disallowed.

9. Dr. Duncan made plans during 1955 to attend the 25th International Congress Against Alcoholism, which was to be held from September 10th to the 15th, 1956, at Istanbul, Turkey. Dr. Duncan had become, because of his writings on the subject of alcoholism and his work in the field, a known expert on the subject in the Kansas City area, but de-

sired to study and research at all phases over the world at which alcoholism had become or not become a problem.

10. Dr. Duncan had planned to make the trip with a companion because of the number of places and points he wanted to visit and the time involved. Mrs. Duncan made this trip with him because of her great interest in the subject, and the physical and actual need for assistance and services to Dr. Duncan on this trip. Dr. Duncan made numerous plans for the trip, including soliciting and receiving the help of the United States Public Health Service at various points over the world, and this trip involved the period from July 25, 1956, to November 15, 1956. He visited San Francisco, Honolulu, Tokyo, Hong Kong, Manila, Singapore, Bangkok, Calcutta, Benares, New Delhi, Agra, Bombay, Karachi, Beruit, Jerusalem, Cairo, Istanbul, Athens, Rome, Madrid, Lisbon, Geneva, Copenhagen, Stockholm, Oslo, London, Ireland, New York, and Washington. At each of these points Dr. Duncan devoted his time and effort, together with Mrs. Duncan when she was not otherwise occupied in handling the mailing of post cards to patients and other individuals, to visiting all available alcoholism treatment centers, specialists in the subject, civic officials, and other people who Dr. Duncan felt could add to his knowledge of the subject. The trip would have been very difficult and less beneficial to the project without the assistance of a traveling companion, because of the problems of currency exchange, air plane reservations, and Mrs. Duncan's assistance to the doctor in the handling of the necessary details made the trip feasible.

11. Dr. Duncan made notes and comments at each point visited, including pertinent observations, all of which were mailed, air mail, to his secretary, Mrs. Georgia B. Dickey, at Ralph Clinic for typing and placing in the official records of Ralph Clinic for future reference and use.

12. Dr. Duncan and Mrs. Duncan attended the meetings at the International Congress, meeting various world authorities. By virtue of these contacts and the general discussions, Dr. Duncan received valuable advice on certain medical aids to the treatment of acute alcoholism, including the use of benadryl, certain tranquilizers, and other aids in hospital care.

13. Dr. Duncan, and indirectly Ralph Clinic, received numerous benefits from this trip. Dr. Duncan advanced his standing because of the publicity on the subject as an international authority and student on the subject of alcoholism, which added substantially to his ability to attract patients to Ralph Clinic. He received the personal educational benefits from the avenues of world education on the physical and psychological ingredients and background of alcoholism, all of which added to the community resources on the subject in the Kansas City area. The patients treated by Dr. Duncan at the Ralph Clinic on his return from this trip received the benefits of his increased knowledge in technique and care, which shortened the number of days that the patients had to be hospitalized, particularly in acute cases. The operation of the clinic became more financially stable after 1956, because of the shortening of patients' periods of hospitalization and because of the increase in the number of patients attracted to the clinic. From contacts made on this trip, Dr. Duncan was enabled to increase his professional status among the experts in the field of alcoholism.

14. Mrs. Duncan's presence and collaboration on this field study was helpful to Mrs. Duncan as a partner in the operation of Ralph Clinic, as well as being necessary to accomplish the primary purpose for which Dr. Duncan expended the considerable sums totalling $9,667.67 on this trip.

15. Alcoholism has been defined and known as a disease by the American Medical Association and is commonly and generally now regarded as a disease problem as opposed to a mental or criminal subject of study. The etiology and causation from a bio-chemical, physiological, psychology, cultural or spiritual

standpoint are uncertain and indefinite with a definite lack of research on these subjects. The efforts expended by Dr. Duncan and Mrs. Duncan to obtain additional knowledge in the international field, as well as the concentrated educational benefits from the five-day Congress at Istanbul, were necessary adjuncts to the specialization of Dr. Duncan and the operation of Ralph Clinic. Their plans for the trip and their efforts expended were for research purposes as opposed to being primarily for pleasure and enjoyment.

16. Of the approximate 150 registrants at the International Congress, 22 (including Dr. and Mrs. Duncan) were from various points over the United States, and of the foreign registrants, from all over the world, a substantial majority were either doctors, psychiatrists or psychologists, and the subject of the various lectures had educational and scientific value to Dr. Duncan in his overall approach to alcoholism, including the care and treatment of patients afflicted with this disease.

17. From July 25, 1956, the departure date from Kansas City, until November 22, 1956, the return date, eliminating the flying time and other intervals during the trip not available for clinical or personal interviews, there were approximately fifty days available for Dr. and Mrs. Duncan to conduct their various visits and contacts at some twenty various cities over the world, including the five days at Istanbul. Careful notes were kept by Dr. Duncan and lists of all persons and contacts were preserved by him for future reference, and with the exception of incidental and minimal incidents, Dr. and Mrs. Duncan devoted their entire time and effort on the trip to the purposes of research and education, which, in his field of specialization such as alcoholism, were reasonable and necessary. The total expenses of $9,667.67 proved for air travel, hotel, and meals for two persons making this extended trip were reasonable.

18. Prior to making the trip Dr. and Mrs. Duncan entertained a group of T. W. A. pilots at the Kansas City Club and expended the sum of $164.90. This group of T. W. A. employees were assembled and invited for the purpose of soliciting suggestions on the various details of the world field study so as to make the trip more economical and simple from a travel standpoint. None of these people entertained were personal friends of Dr. and Mrs. Duncan, and the evening added to the status of Ralph Clinic inasmuch as there was at least one patient referred to the Clinic in later years from T. W. A. The expenses incurred of $164.90 were intended to accomplish a promotional and educational purpose and did accomplish this purpose for Dr. and Mrs. Duncan, as well as Ralph Clinic.

19. The income tax returns of Dr. and Mrs. Duncan were examined for the taxable year 1956, and the Internal Revenue Service disallowed expenses of $10,001.15 for the world trip and also disallowed the Kansas City Club dinner for the T. W. A. employees in the sum of $164.90. Following the filing of a protest, plaintiffs paid the sum of $2,753.03 to the District Director of Internal Revenue, and on December 14, 1959, filed within the statutory period a claim for refund in the sum of $2,681.82, being the total of the sums of $2,319.51 as tax, with $362.31 as interest thereon. After disallowance of the claim for refund on March 7, 1960, plaintiffs filed their complaint in this Court, assailing as error the disallowance of the expenses of the world trip and the Kansas City Club dinner for the T. W. A. employees. Under the evidence in the case plaintiffs only proved the sum of $9,667.67 of the $10,001.15 claimed as expense for the trip.

20. The government, in its case and argument, made much of the fact that plaintiffs' visit included, in addition to medical conferences on the problem of alcoholism and places where the problem of alcoholism was prevalent, places where there was no problem of alcoholism at all. In the opinion of the Court the fact that certain places or countries

had no problem of alcoholism would be of as great or possibly greater interest than the fact that certain places might have an acute alcohol problem, inasmuch as the reasons for the lack of an alcoholism problem could possibly shed much light on the causes, etiology, and the cure and possible remedies for such problem, and, therefore, the Court is not impressed with the argument that such places could be of little interest to plaintiffs.

21. While it is apparent that plaintiffs did some limited "sightseeing" in some of the places visited, it seems clear to the Court that the prime motivating factor for the trip was the study of the international problem of alcoholism, its causes and cures, and any digressions from this primary purpose by plaintiffs was merely incidental.

### CONCLUSIONS OF LAW.

1. The Court has jurisdiction of the parties to and the subject matter of this action.

2. The plaintiffs have sustained the burden of proof resting upon them and the expenses claimed by them as deductions on their 1956 partnership income tax return were properly claimed under § 162(a) (2) of the Internal Revenue Code of 1954 and under Treasury Regulations, §§ 1.162-2 and 1.162-5, as ordinary and necessary expenses directly related to the business and profession carried on by Dr. Duncan as a doctor and by Dr. and Mrs. Duncan, as co-partners, operating Ralph Clinic, and were for educational and research purposes as opposed to being primarily personal in nature. The Kansas City Club entertainment of the T. W. A. employees was for the purpose of obtaining helpful information concerning the world trip and was not for personal and pleasure entertainment purposes.

3. The plaintiffs have properly claimed deductions in the sum of $9,667.67 for ordinary and necessary travel expenses on the world trip and in the sum of $164.90 for the Kansas City Club entertainment on their 1956 partnership return, and the District Director improperly disallowed such claimed deductions and improperly made the assessment in issue. Plaintiffs are entitled to a refund of taxes paid on the amounts improperly disallowed as shown by the Court's findings of fact.

### OPINION

The Court is of the opinion that, under the facts and circumstances of this case, the expenses of the trip proved and disallowed by defendant were ordinary and necessary business expenses of plaintiffs, as an adjunct to the operation of the Ralph Clinic, and that said expenses were properly deductible under § 162, Title 26 U.S.C. Because of the peculiar complexities of the problem of dealing with and treating the disease of alcoholism the plaintiffs should be allowed reasonable latitude in determining the type of expenses incurred in connection with the research, study and etiology of this disease and its attending problems. Where, as here, the expenses incurred contribute substantially to the plaintiffs' knowledge and technique of treatment of the disease of alcoholism, these expenses logically bear a direct relationship to the successful operation of the Clinic.

Judgment for plaintiffs will be entered in accordance herewith.