RICHARD WALTER DRAKE & JEAN ANN DRAKE (SCHICK), Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Drake v. Commissioner
Docket No. 3596-72.
United States Tax Court
T.C. Memo 1973-129; 1973 Tax Ct. Memo LEXIS 158; 32 T.C.M. (CCH) 553; T.C.M. (RIA) 73129; June 14, 1973, Filed *158 Richard Walter Drake, pro se. Timothy L. Nelson, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in the Federal income taxes of Richard Walter Drake and Jean Ann Drake (Schick) for the taxabe year 1969 in the amounts of $354.60 and $370.47, respectively. The petitioners have conceded one issue and the respondent another. Only two issues remain for our decision: (1) Whether the petitioners are entitled to a deduction for commuting 2 expenses incurred in connection with their jobs as airline steward and airline stewardess; and (2) whether they are entitled to a deduction for travel expenses and depreciation allegedly incurred in connection with a second line of employment. FINDINGS OF FACT The parties have stipulated some facts. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Richard Walter Drake ("Richard") and Jean Ann Drake (Schick) ("Jean") were husband and wife during 1969, the year in issue here. They resided at 117 Mountain Avenue, Warren, New Jersey, when they filed their petitions in this proceeding. [1] They filed separate *159 Federal income tax returns for the calendar year 1969 with the district director of internal revenue at Newark, New Jersey. Travel To and From Work In 1969, Richard worked as a steward - or sometimes as a purser - and Jean as a stewardess for Pan American World Airways ("Pan Am"). They lived in Warren, New Jersey, and flew out of Kennedy International Airport, which is located on the south side of Long Island. Except for one month during the year, they commuted to and from work together. 3 By public transportation, the trip from home to work, or vice versa, took approximately three hours (if they were lucky making connections) or as much as six hours (if they were unlucky); and it cost six to ten dollars per person including the cost of taking a taxi to the closest bus stop. By car the same trip took approximately one and one-half to one and three-quarters hours and cost around five dollars for the two of them. Whether or not they carried their equipment and clothing, *160 they would have driven their car to and from the airport. Richard carried with him in the car the following required or necessary items: (a) A briefcase measuring 2 feet by 8 inches at the base, 12 inches high, and tapered at the top (it was an old-style, accordion-bottomed briefcase); (b) inside the briefcase, an announcement book, a large (1 foot by 1-1/2 foot) operations manual, and a smaller safety manual; (c) also in the briefcase, two standard continental service sets (each consisting of large knives and forks), one collection of galley equipment (consisting of a spatula, tongs, rubber gloves, a meat thermometer), and a small assortment of knives for various purposes; (d) an average size valise containing a white dinner jacket, an extra uniform, and an extra hat; (e) the limited amount of personal clothing for flights having layovers. This load was not so heavy, unwieldy or bulky as to preclude its carriage on buses and subways and in taxicabs. 4 Jean carried the following required or necessary items with her: A tote bag containing an announcement book and some decks of playing cards and another blue bag containing aprons, an extra uniform and hat, and extra accessory *161 items such as a blouse, stockings, cosmetics, gloves, and shoes. Together these items were not so heavy or cumbersome that they could not be carried on a bus or a subway or in a taxi. Each claimed an employee business expense on Schedule A of $440. Travel Expenses and Depreciation Richard and Jean operated a small import business on a part-time basis during the year 1969. They brought items such as music boxes and baby clothing back from their travels and sold them mainly to friends, friends of friends, and a few local boutiques. In November 1969, they placed an order for a Mercedes Benz automobile. Delivery was to be made at the Mercedes plant in Stuttgart, Germany. In December 1969, the two of them flew to Stuttgart and took possession of the car. The car cost $6,674.47. From Stuttgart they drove through Munich, Zurich, the Alps and France to London, England, where the car was shipped to the United States. A few stops were made on the way to make contacts with sellers of import items and to buy samples. Richard's sister accompanied them. The car did not arrive in the United States until sometime in January 1970. 5 On their separate 1969 Federal income tax *162 returns the petitioners each deducted one-half of the cost of the round trip to Stuttgart and depreciation on the Mercedes for a period of two months. The depreciation claimed was $371 on each return. The Mercedes was not used in their trade or business in the taxable year 1969. The travel expenses were primarily personal. OPINION 1. Travel to and from Work. Petitioners claim that they are entitled to a deduction for the cost of commuting between their home in New Jersey and their place of work on Long Island. Respondent, while not contesting the amount claimed, disallowed the deduction on the ground that it is a personal, and thus nondeductible, expenditure. We sustain respondent's determination on two grounds. First, the equipment and luggage carried by petitioners was not so bulky or heavy as to necessitate its carriage by private car, as opposed to public transportation. This being the case, petitioner have failed to prove that the expense in question was anything other than the ordinary commuting expense. To allow the deduction on this record would be tantamount to holding that personal commuting expenses can be converted into ordinary and 6 necessary business *163 expenses by simply carrying a brief case to and from work. See Rev. Rul. 63-100, 1963-1 C.B. 34, modifying Rev. Rul. 56-25, 1956-1 C.B. 152. Second, even if the load had been too heavy and cumbersome to transport any way except by private car, we would not allow the deduction since the petitioners would have driven their own automobile in any event. We would not allocate some portion of the commuting expense to the transportation of the bags and equipment. See Fausner v. Commissioner, 472 F.2d 561 (C.A. 5, 1973), affirming a Memorandum Opinion of this Court; Harold Gilberg, 55 T.C. 611 (1971); Robert A. Hitt, 55 T.C. 628 (1971). As we have said before, we disagree with the result reached in Sullivan v. Commissioner, 368 F.2d 1007 (C.A. 2, 1966), and Tyne v. Commissioner, 385 F.2d 40 (C.A. 7, 1967), and will not follow them where not compelled to do so. Cf. Arnold T. Anderson, 55 T.C. 756 (1971), citing Jack E. Golsen, 54 T.C. 742 (1970), affirmed 445 F.2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940. 2. Travel Expenses and Depreciation. *164 Petitioner argue that the amounts claimed as travel expenses in connection with their European trip and the depreciation claimed on the Mercedes car are related to their import business and are therefore deductible. Respondent contends that the requisite relationship between the expenses and the business has not been established. We agree with the respondent. 7 We find that the trip beginning in Stuttgart, Germany, and eventually ending in London, England, was primarily a pleasure trip. Furthermore, petitioners have failed in their attempt to prove the business application of the automobile from the time they received delivery until the end of the taxable year 1969. They have given us no basis for allowing any of the expenses. Cf. Ralph E. Duncan, 30 T.C. 386 (1958). See, e.g., Frank L. Robinson, T.C. Memo. 63-209; Cornelius Sullivan, T.C. Memo. 63-264; Irving Eisenberg, T.C. Memo. 67-35. To reflect the conceded issues and our conclusions with respect to the disputed ones, Decision will be entered under Rule 50. Footnotes
1. This address appears on the petition. Another address is stipulated: 265 New Ocean Avenue, Long Branch, New Jersey. For purposes of appellate jurisdiction, this discrepancy is unimportant. ↩