T.C. Memo. 1998-115


UNITED STATES TAX COURT


EDWARD E. AND CONSTANCE M. THORPE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


EDWARD E. THORPE AND COMPANY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 23895-95, 23900-95.      Filed March 23, 1998.


Cheryl Frank and Chaya Kundra, for petitioners.

Alan R. Peregoy, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties in these consolidated cases as follows:

Edward E. and Constance M. Thorpe
docket No. 23895-95

| Year | Deficiency | Accuracy-related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1990 | $8,641 | $1,728 |
| 1991 | 7,538 | 1,508 |
| 1992 | 7,198 | 1,440 |

Edward E. Thorpe & Co.
docket No. 23900-95

| FYE | Deficiency | Accuracy-related Penalty Sec. 6662(a) |
|-----|-----------|---------------------------------------|
| 6/30/91 | $38,803 | $7,761 |
| 6/30/92 | 20,862 | 4,172 |

After concessions,[1] the issues remaining for decision are:

_____

[1]Petitioner Edward E. Thorpe & Co. (ETCO) concedes that it is not entitled to: (1) Cost of goods sold/meals expenses of $4,251 and $4,996 claimed in the fiscal years ending June 30, 1991 and 1992, respectively; (2) a deduction in the amount of $5,744 for payments made to a pension plan claimed on its corporate income tax return for the fiscal year ended June 30, 1992; (3) a deduction in the amount of $2,655 for premiums paid to life insurance companies for insurance on the life of Edward E. Thorpe claimed on its corporate income tax return for the fiscal year ended June 30, 1990; (4) office expenses in the amount of $1,249 claimed on its corporate income tax return for the fiscal year ended June, 30, 1992; and (5) deductions for "dues and publications" in the amounts of $3,078 and $2,376 for the fiscal years ending June 30, 1990 and 1992, respectively.

Petitioners Edward E. Thorpe and Constance M. Thorpe concede: (1) $2,655 paid by ETCO to life insurance companies is includable in their income as a constructive dividend in 1990, and (2) amounts of $3,078 and $2,376 paid by ETCO for "dues and publications" are includable in their income as a constructive dividend in the taxable years 1990 and 1992, respectively.

Respondent concedes: (1) ETCO is entitled to a cost of goods sold/meals deduction in the amount of $4,526 for the fiscal
(continued...)

(1) Whether expenses incurred by Mrs. Thorpe related to travel and entertainment at various trade shows and conventions were properly deducted in the years at issue by Edward E. Thorpe & Co. (ETCO) for the fiscal years June 30, 1990, 1991, and 1992; (2) whether amounts received as rental payments in 1990, 1991, and 1992 by Mr. and Mrs. Thorpe from ETCO were excessive and should, in part, be characterized as constructive dividends received by Mr. and Mrs. Thorpe; (3) whether amounts remitted by ETCO by check to an insurance company were deductible where no check was presented for payment by the insurance company; (4) whether premiums paid by ETCO for various life and disability insurance policies were properly deducted as expenses during the fiscal years June 30, 1990, 1991, and 1992; (5) whether expenses related to the use of two leased automobiles were properly deducted in the years at issue by ETCO; (6) whether alleged "advance" payments from ETCO to Mr. and Mrs. Thorpe are includable in Mr. and Mrs. Thorpe's income for the years in issue; (7) whether amounts paid to Edward E. Thorpe, Jr., the son of Mr. and Mrs. Thorpe, must be included in Mr. and Mrs. Thorpe's income in 1990;

---

[1](...continued)
year ended June 30, 1990, which amount was disallowed in computing the net operating loss carryover to the fiscal year ended June 30, 1991; (2) ETCO is entitled to deductions for equipment rental fees paid to R.W. Nichols in the amounts of $5,804, $4,183, and $5,744 for fiscal years ended June 30, 1990, 1991, and 1992, respectively; and (3) ETCO is entitled to deductions for "dues and publications" in the amounts of $100 and $125 for fiscal years ending June 30, 1990 and 1992, respectively.

(8) to the extent various expenses deducted by ETCO are disallowed, must the expenses then be characterized as constructive dividends received by Mr. and Mrs. Thorpe; and (9) whether ETCO and Mr. and Mrs. Thorpe are liable in the years at issue for accuracy-related penalties pursuant to section 6662.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, second stipulation of facts, and stipulation of settled issues are incorporated herein by this reference. At the time the petitions were filed, Mr. and Mrs. Thorpe resided in Silver Spring, Maryland, and ETCO's principal place of business was located in Kensington, Maryland.

During the years in issue, Edward Thorpe was the chief executive officer of ETCO. Mr. Thorpe owned 100 percent of the shares of ETCO. ETCO was incorporated on May 6, 1982, and became engaged in a specialized type of contracting, which principally involved interior renovation of kitchens and bathrooms in public housing. Constance Thorpe was the chief financial officer of ETCO. Mrs. Thorpe was responsible for the financial aspects of ETCO including accounts receivable, accounts payable, payroll, and insurance. The remaining officers of ETCO included Mr. Ron

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Echols, who was responsible for field operations, and Mr. Edward Thorpe, Jr., the son of Mr. and Mrs. Thorpe.

Mr. and Mrs. Thorpe started ETCO as a home-based business. ETCO procured most of its business through direct solicitation of housing authorities in various states. In an effort to market ETCO's services directly to housing authorities, ETCO participated in trade shows and conventions for which ETCO incurred travel and entertainment expenses. Mr. Thorpe attended the trade shows and conventions where he would represent ETCO by stationing himself at an exhibit booth, which displayed ETCO's products. Mrs. Thorpe attended a number of conferences with Mr. Thorpe. While at the trade shows, Mrs. Thorpe occupied the display booth and talked to people about ETCO's product, met new or prospective clients, learned more about the market, and solicited new business. In the fiscal tax years ending June 30, 1990, 1991, and 1992, ETCO incurred and deducted on its U.S. Corporation Income Tax Returns (Forms 1120) travel and entertainment expenses of $74,395, $81,237, and $75,749, respectively.

In 1988, the officers of ETCO began looking for commercial office space from which to run its business operations. The officers spent approximately 1 year evaluating the local commercial real estate market. During that time, the officers contacted numerous real estate agents and researched real estate listings in local newspapers.

On October 13, 1989, Mr. and Mrs. Thorpe executed an agreement to purchase an office condominium in Kensington, Maryland, for $165,000. The closing took place on April 18, 1990, and on the same day, Mr. and Mrs. Thorpe executed a promissory note in the amount of $132,000, which note is guaranteed by ETCO. The office condominium space consisted of 900 square feet, inclusive of storage space. The monthly payment on the note was $1,341.75. Also, on April 18, 1990, Mr. and Mrs. Thorpe and ETCO executed an agreement for the lease of the Kensington office condominium from Mr. and Mrs. Thorpe to ETCO requiring a monthly lease payment of $2,500 from ETCO to Mr. and Mrs. Thorpe.

ETCO reported its taxable income and kept its books using the cash method of accounting for the fiscal years in issue. During the years 1988 through 1990, ETCO presented pension plan contribution checks to Union Central Life Insurance Co. through Mr. William Sloan, its insurance agent. When the checks were presented to Mr. Sloan, he would compile data and send the corresponding checks and data to the pension plan company. In his capacity as a broker, Mr. Sloan was able to place business with several different companies without specific attachment to any one company.

In 1990, ETCO decided not to use Union Central Life Insurance Co. as the insurance provider for its pension plan. In an effort to find another insurer, ETCO contacted Mr. Sloan, who

recommended that ETCO set up a replacement pension plan with TransAmerica Insurance Co. (TransAmerica).  The officers of ETCO completed the application for the new pension plan and made a check in the amount of $64,000 payable to TransAmerica.  ETCO submitted the application and the $64,000 check to TransAmerica through Mr. Sloan.  Mr. Sloan submitted the documents and the check for $64,000 to Mr. Tom Boone, an employee of TransAmerica. The $64,000 was properly credited to ETCO's account with TransAmerica.

On March 8, 1991, ETCO made a check in the amount of $22,000 payable to TransAmerica.  The $22,000 check was also submitted to Mr. Sloan, who then forwarded the check to TransAmerica.  The $22,000 check never cleared ETCO's bank account, and the funds were never credited to ETCO's account with TransAmerica.  On May 20, 1991, Mrs. Thorpe contacted Mr. Sloan to inquire as to why the check had not cleared ETCO's bank account.  Mr. Sloan thereafter contacted TransAmerica and was informed that additional information was needed in order to process ETCO's application to TransAmerica for insurance.  In September of 1991, Mrs. Thorpe inquired further as to why the $22,000 had not been credited to ETCO's account with TransAmerica.  Mr. Sloan informed Mrs. Thorpe that TransAmerica was waiting on further information.

On January 29, 1992, upon notice that the check dated March 8, 1991, in the amount of $22,000 had not been credited to ETCO's account, ETCO made another check payable to TransAmerica in the

amount of $22,000. ETCO presented the replacement check in the amount of $22,000 to Mr. Sloan, who again forwarded the second check to TransAmerica. The replacement check also did not clear ETCO's bank account and was not credited to ETCO's account with TransAmerica. On July 3, 1992, ETCO requested that Mr. Sloan return all documents related to the ETCO pension plan. As a result, the plan documents, the second $22,000 check, and the original $64,000 were returned to ETCO.

Upon notice that the second check had not been credited to ETCO's account with TransAmerica, ETCO sought out a new insurance carrier through another insurance agent. On August 31, 1992, upon finding a replacement insurance carrier, ETCO made a third check in the amount of $22,000. This check was made payable to Aetna, a separate insurance company.[3]

During the fiscal years in issue, ETCO paid life insurance premiums for Edward Thorpe, Constance Thorpe, and Mr. Echols. ETCO was also the owner and beneficiary of the life insurance

---

[3]The parties stipulate that an ETCO check made payable to Aetna, dated Aug. 31, 1992, in the amount of $22,000, represents an amount claimed as a deduction on ETCO's tax return for the fiscal year ended June 30, 1990. Respondent disallowed a deduction in the amount of $22,000 in ETCO's tax year ending June 30, 1990. It is unclear how many checks in the amount of $22,000 were issued by ETCO and how many of those checks were returned. Because we hold that the amount was not deductible under the facts presented, we need not decide whether the check dated Mar. 8, 1991, was the first check or when the first $22,000 check was remitted to TransAmerica or how such a check could relate to the check dated Aug. 31, 1992, and be deductible in the year ending June 30, 1990.

policies on each of the individuals.  On July 1, 1983, Mr. Thorpe executed an application for disability insurance with Time Insurance Co. as the insurer.  On November 4, 1989, Mr. Echols executed an application, as owner, for disability insurance with Time Insurance Co.  ETCO paid the insurance premiums on both disability insurance policies and, subsequently, deducted the expenses on its tax returns for the years in issue.  ETCO also maintained liability, workman's compensation, commercial auto, medical, excess liability, and casualty and surety insurance.

In 1988, Mr. and Mrs. Thorpe signed two vehicle lease agreements on behalf of ETCO for two vehicles they drove during the years in issue.  ETCO made the lease payments for both of the automobiles during the years in issue.  Both lease agreements listed Mr. and Mrs. Thorpe as the lessees of the automobiles, and both automobiles were leased from the same company.  The first lease was for a 1988 Lincoln Towncar and was dated May 10, 1988. Paragraph 24 of the lease agreement on the Lincoln contained two boxes in which the lessees could indicate that the automobile was intended to be used for either business purposes or personal use. Neither box was marked to indicate that the lessees intended to use the Lincoln for either business or personal use.  The second lease was for a 1988 Mercury Colony Park and was signed July 20, 1988.  Paragraph 24 of the lease agreement for the Mercury specifically designated the vehicle's use as being for business.

Mr. and Mrs. Thorpe also entered into an auto insurance contract for both of the vehicles. The insurance contract shows a vehicle-use designation for each automobile. The insurance contract, like the lease agreement, indicates that the Mercury was to be used for business. However, the vehicle-use indication for the Lincoln is marked as personal.

Throughout the years in issue, both ETCO and Mr. and Mrs. Thorpe used the services of Mr. Lewis Buck, a certified public accountant, to help maintain their books and records. Mr. Buck also performed annual audits for ETCO and prepared tax returns for both ETCO and Mr. and Mrs. Thorpe.

Mr. Buck determined the amount of business usage of the leased vehicles based on a 12-month period. Mr. Buck discussed the amount of personal usage for each of the vehicles with Mr. and Mrs. Thorpe and analyzed the check register, lease agreements, odometers, daily logs, and other documents to determine that Mr. and Mrs. Thorpe should reimburse ETCO for personal use of the two automobiles. At the end of each yearly audit, Mr. Buck would have a meeting with Mr. and Mrs. Thorpe and the officers of ETCO to review items and make recommendations. At the expiration of the auto leases in December 1993, Mr. Buck recommended that Mr. and Mrs. Thorpe reimburse ETCO for the amount of personal use for each of the vehicles during the lease term. Mr. Buck determined that Mr. and Mrs. Thorpe should pay ETCO for 25 percent of the use of the vehicles. On December 3,

1993, Mr. and Mrs. Thorpe made a check payable to ETCO in the amount of $5,334 for their personal use of the automobiles.

OPINION

Deductions for Travel to Conventions and Auto Expenses

In the notice of deficiency issued to ETCO, respondent disallowed ETCO's deductions for travel and entertainment expenses, which were incurred by Mrs. Thorpe during her attendance at various conventions on behalf of ETCO. Respondent also disallowed ETCO's deductions for expenses related to the leased automobiles. Respondent disallowed the travel and auto expenses on the bases that ETCO failed to establish that there was a business purpose for the expenses and, further, that it failed to substantiate some of the claimed expenses in accordance with sections 162, 262, and 274(d). ETCO, on the other hand, contends that it is entitled to deduct all the claimed expenses.

Section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". To be "necessary" an expense needs to be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. 111, 113 (1933). For an expense to be "ordinary", "the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved". Deputy v. du Pont,

308 U.S. 488, 495 (1940) (citing Welch v. Helvering, supra at 114). ETCO bears the burden of proving that the claimed expenses are deductible. Welch v. Helvering, supra at 115.

Mrs. Thorpe was an officer and an employee of ETCO. Mrs. Thorpe attended various trade shows and conventions at which she occupied the display booth, talked to people about ETCO's product, met new or prospective clients, learned more about the market, and solicited new business. ETCO procured most of its business through direct solicitation of housing authorities in various states where trade shows and conventions attracted prospective clients. Respondent does not question the expenses incurred by Mr. Thorpe who, like Mrs. Thorpe, was an officer and employee of ETCO. Under these facts and circumstances, we find that the travel and entertainment expenses incurred by Mrs. Thorpe were ordinary and necessary business expenses of ETCO. See Duncan v. Bookwalter, 216 F. Supp. 301, 305 (W.D. Mo. 1963).

Respondent argues that $1,514, $786, and $1,095 of the total travel and entertainment expenses of $74,395, $81,237, and $75,749 deducted by ETCO for the fiscal years ending June 30, 1990, 1991, and 1992, respectively, are not allowed because they do not meet the substantiation requirements under section 274(d). Under section 274(d)(4), the taxpayer must substantiate: (1) The amount of the claimed expense; (2) the time and place the expense was incurred; and (3) the business purpose of the expense. At trial, respondent attempted to elicit testimony that would show a

lack of business purpose on the part of Mrs. Thorpe in attending the various conferences. On brief, respondent argues that Mrs. Thorpe's presence at the conventions was primarily a personal benefit to her rather than a business purpose that benefited ETCO. Respondent's argument regarding lack of substantiation was not meaningfully addressed until the reply brief was filed. Respondent has isolated a small percentage of travel expenses that has been attributed specifically to Mrs. Thorpe. It would be difficult to imagine how respondent could attribute an exact amount of expenses to Mrs. Thorpe without any substantiation of the expenses in the first place. Further, where Mr. and Mrs. Thorpe attended the conferences together, certain expenses, such as meals and lodging, must have been substantiated for Mr. Thorpe on the same documentation as would have been used for Mrs. Thorpe. Respondent does not question the substantiation of Mr. Thorpe's travel expenses. Under these circumstances, we find that respondent's argument regarding lack of substantiation is without merit.

With respect to the automobiles, the Mercury and the Lincoln are listed property under section 280F(d)(4)(A)(i) because they are passenger automobiles. A taxpayer may not deduct automobile expenses, unless he or she substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement the amount, time and place, and business purpose of the expense. Sec. 274(d)(4).

ETCO did not provide sufficient substantiation to refute respondent's determination of the automobile expenses as required under section 274(d)(4). Although ETCO offered a mileage log, which showed destinations, dates, and miles driven, ETCO did not offer records to substantiate which of the two automobiles had been driven on each date, the total odometer mileage for each automobile, return dates, or the business purpose of each trip they took in each of the automobiles. Added to the lack of substantiation to determine accurately the business-use percentage are the facts that the Lincoln was not designated as a business-use automobile on the lease agreement and was designated as a personal-use vehicle on the insurance contract. We find that ETCO has not carried its burden to show that deductions in excess of that determined in respondent's notice of deficiency should be allowed.[4]

Respondent further argues that the amounts of the automobile lease payments and the automobile insurance payments, paid by ETCO and attributed to Mr. and Mrs. Thorpe's personal use, were constructive dividends from ETCO to Mr. and Mrs. Thorpe. Generally, section 61 provides that gross income includes income from whatever source derived, including fringe benefits, gross

_____

[4]In the notice of deficiency sent to ETCO, respondent also determined that ETCO's income must be increased by $713 in fiscal year 1990 due to the auto lease inclusion requirements. See sec. 280F. Petitioners do not contest this amount, either at trial or on their briefs. Therefore, respondent's determination with respect to this amount is sustained.

income derived from business, and dividends.  When a corporation confers an economic benefit upon a shareholder, in his capacity as such, without an expectation of reimbursement, that economic benefit becomes a constructive dividend, taxable as such.  Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1214 (5th Cir. 1978); Jones v. Commissioner, T.C. Memo. 1997-400.  An expenditure made by a corporation for the personal benefit of its shareholders may result in the receipt of constructive dividends. Ireland v. United States, 621 F.2d 731, 735 (5th Cir. 1980).

Because we have sustained respondent's determination with respect to the automobiles used by petitioners individually, we further find that ETCO's payments of expenses associated with Mr. and Mrs. Thorpe's personal use of the automobiles resulted in a constructive dividend to Mr. and Mrs. Thorpe to the extent that they did not reimburse ETCO for the expenses.

Office Rent Deductions

Respondent argues that expenses incurred by ETCO for office condominium rental are not allowable as a deduction to the extent that the rent exceeded the fair market rental value.  Respondent further determined that a portion of the perceived excess rental payments constitutes a constructive dividend from ETCO to Mr. and Mrs. Thorpe.  Respondent contends that the rent paid by ETCO for the office condominium was not established at arm's length between the parties.  ETCO, on the other hand, argues that the

amount of rent was not excessive, as established by their expert witness, and that the rental payments are deductible under section 162.

Section 162(a)(3) generally provides that a taxpayer may deduct rent paid in carrying on a trade or business. Section 162(a)(3) does not specifically limit deductions for rental payments to a "reasonable allowance." Levenson & Klein, Inc. v. Commissioner, 67 T.C. 694, 715 (1977). Nevertheless, if there is a close relationship between the lessor and lessee, "an inquiry into what constitutes reasonable rental is necessary to determine whether the sum paid is in excess of what the lessee would have been required to pay had he dealt at arm's length with a stranger." Id. at 715 (quoting Place v. Commissioner, 17 T.C. 199, 203 (1951), affd. per curiam 199 F.2d 373 (6th Cir. 1952)). A close relationship between lessor and lessee does not mean that a valid lease agreement between them cannot exist. Feldman v. Commissioner, 84 T.C. 1, 5 (1985), affd. 791 F.2d 781 (9th Cir. 1986); Kansas City S. Ry. v. Commissioner, 76 T.C. 1067, 1102 (1981). Therefore, we are required to examine the circumstances surrounding the arrangement to determine whether the rent was in excess of the amount which an unrelated lessee would have paid in an arm's-length transaction. W.H. Braum Family Partnership v. Commissioner, T.C. Memo. 1993-434; see also Harmon City, Inc. v. United States, 733 F.2d 1381, 1383 (10th Cir. 1984).

At trial, petitioners presented their expert witness, Mr. Peter Larson III. Petitioners offered the expert report of Mr. Larson for the purpose of proving the amount of rent charged to ETCO by Mr. and Mrs. Thorpe was not excessive. In his report, Mr. Larson described the condition of the real estate market in the Washington, D.C., metropolitan and surrounding area in the early 1990's as having experienced a dramatic decline, which caused average rents to be reduced from annual square foot rates from "upper $20's to low $30's to numbers that did not support [many commercial projects]." Mr. Larson also indicated in his report that because of the dramatic decline in the real estate market, many large institutions sought to restructure leases. Mr. Larson reasoned that because Mr. and Mrs. Thorpe premised the amount of rent they charged ETCO on the amount of their debt obligation in the office condominium, there would be no reason to consider restructuring their lease agreement with ETCO.

Mr. and Mrs. Thorpe received rent from ETCO of $30,000 per year ($2,500 per month). Respondent determined that the fair market rent was $14,028 per year.[5] Neither petitioners nor their expert presented any evidence which would contest respondent's determination of fair market value based on reasonable

---

[5]Mr. and Mrs. Thorpe received rent from ETCO of $30,000 per year, and respondent determined that the dividend from rental payments was $15,972 for each of the years in issue. Thus, the fair rent per year would be $14,028 ($30,000 less dividend of $15,972 equals $14,028).

comparisons with similar rental property under any valuation method. Mr. Larson's report generally summarizes market conditions as they existed in the late 1980's and early 1990's in the Washington, D.C., and surrounding vicinity. Mr. Larson's report does not persuade us that the amount of rent paid by ETCO was not in excess of the amount which an unrelated lessee would have paid in an arm's-length transaction, and we are not bound by it. Parker v. Commissioner, 86 T.C. 547, 561 (1986). Mr. Larson's report contained no calculation of fair market rent based on any method of valuation which could be accepted by the Court. We find that petitioners have not met their burden of proving that respondent's determination of market valuation was incorrect. Therefore, ETCO is not entitled to a rent deduction for each of the years in issue in excess of that amount determined in the notice of deficiency.[6] Further, Mr. and Mrs. Thorpe received a constructive dividend in the amount of the difference.

_____

[6]In the notice of deficiency for Mr. and Mrs. Thorpe, respondent disallowed rental real estate losses associated with the office condominium resulting from the recharacterization of the office rental income as constructive dividends. Generally, sec. 469 provides that the deduction allowed for a limited amount of passive losses arising from rental real estate activities becomes phased out as the taxpayer's adjusted gross income reaches certain levels. Sec. 469(i). To the extent sec. 469 disallows a deduction for losses associated with petitioner's resulting rental losses, the parties must make appropriate adjustments in their Rule 155 calculation in accordance with the outcome of our opinion in this case.

Pension Plan Contribution

Respondent argues that ETCO is not entitled to a $22,000 deduction claimed in its fiscal year ending June 30, 1990, by remittance of a check for an alleged payment of a pension plan contribution. In general, a cash basis taxpayer may deduct expenses only "for the taxable year in which paid." Sec. 1.461-1(a)(1), Income Tax Regs. Checks do not represent final payment relieving a debtor of liability, but rather constitute only conditional payment which becomes absolute when the creditor presents the check to the bank, which then honors it. Md. Code Ann., Com. Law I sec. 3-310(b)(1) (Michie 1997); Weber v. Commissioner, 70 T.C. 52, 57 (1978). For Federal tax purposes, the subsequent payment of the check relates back to the date of delivery so as to allow deductions even where checks are presented and honored during later years. Weber v. Commissioner, supra at 57; see Clark v. Commissioner, 253 F.2d 745, 748 (3d Cir. 1958), affg. in part, revg. in part, and remanding T.C. Memo. 1956-176; Commissioner v. Bradley, 56 F.2d 728 (6th Cir. 1932), affg. 19 B.T.A. 49 (1930); Estate of Spiegel v. Commissioner, 12 T.C. 524 (1949). But where the checks were not presented and honored in due course, this Court has held that no payment ever occurred because the condition upon which the conditional payment rested was never satisfied. Weber v. Commissioner, supra at 57; Estate of Hubbell v. Commissioner, 10

T.C. 1207 (1948); Eagleton v. Commissioner, 35 B.T.A. 551 (1937), affd. 97 F.2d 62 (8th Cir. 1938).

The record shows that on March 8, 1991, ETCO remitted a check in the amount of $22,000 to TransAmerica via Mr. Sloan. TransAmerica never presented the check to ETCO's bank for payment. A second check for the same amount dated January 29, 1992, was made and remitted to TransAmerica to replace the lost check dated March 8, 1991. The check dated January 29, 1992, was ultimately returned to ETCO. Because neither of ETCO's checks made payable to TransAmerica was presented and honored in due course, it does not constitute payment, which would relate back to an earlier date of the delivery of either check to TransAmerica. Because none of the $22,000 checks made payable to TransAmerica were presented for payment, we find that no payment occurred, and ETCO is not entitled to a deduction in fiscal years ending June 30, 1990 or 1991 under the cash basis method of accounting.

Premiums for Life and Disability Insurance Policies

Respondent argues that ETCO is not entitled to the expense deductions for life and disability insurance premiums in the amounts of $6,345, $5,490, and $3,690 for the fiscal years ended June 30, 1990, 1991, and 1992, respectively. Respondent contends that ETCO was the owner and beneficiary of such policies. ETCO contends that it is entitled to deduct the premiums paid during

the years in issue on policies which insure the lives of ETCO's corporate officers, notwithstanding the fact that ETCO was the beneficiary of the policies. ETCO also argues that premiums paid on disability policies for Mr. Thorpe and Mr. Echols are deductible by ETCO.

Section 264(a)(1) specifically provides that no deduction shall be allowed for premiums paid on any life insurance policy when the taxpayer is directly or indirectly a beneficiary under the policy. ETCO paid and deducted the premiums for insurance policies on the lives of Mr. and Mrs. Thorpe and Mr. Echols. ETCO was also the owner and beneficiary on each of the policies. As such, section 264(a)(1) disallows a deduction of any amounts paid by ETCO in connection with the life insurance policies.

With respect to the disability insurance policies on Mr. Thorpe and Mr. Echols, respondent cites Rugby Prods. Ltd. v. Commissioner, 100 T.C. 531 (1993), as authority for disallowing ETCO's deductions for the disability payments in the years in issue. Generally, where an employee has all the rights of ownership in a disability insurance policy, and none of the benefits are payable to the corporation, the corporation may pay and deduct premiums on the disability policy in accordance with section 162.[7] Rugby Prods. Ltd. v. Commissioner, supra at 538-541.

---

[7]Respondent does not argue that the deductions were not ordinary and necessary business expenses under sec. 162.

ETCO submitted, as evidence, a policy schedule for the disability policy covering Mr. Thorpe. The schedule lists Mr. Thorpe as the "insured" and then lists "the insured" as the "owner". Thus, Mr. Thorpe is listed as both the owner and insured of the policy schedule. The policy schedule shows an effective date of July 21, 1983, and an annual premium of $1,073.20 until July 21, 2007. Similarly, ETCO submitted an application for insurance, which was signed by Mr. Echols, as the "proposed insured". On the same form just below Mr. Echols' signature, there was another signature line for the "signature of owner/applicant (if other than proposed insured)". This signature line was left blank indicating that the insured, Mr. Echols, was intended to be the owner of the policy. We find this evidence to be determinative in finding that ETCO was not the beneficiary of the two disability insurance policies. Unlike the taxpayer in Rugby Prods. Ltd. v. Commissioner, supra, ETCO is not a beneficiary of the policies, and our holding in Rugby Prods. Ltd., does not operate to preclude the deductions for the premiums in this case. Accordingly, ETCO is entitled to deduct the disability premiums in question.

Payments From ETCO to Mr. Thorpe and Payments to Eugene Thorpe

In the notice of deficiency sent to Mr. and Mrs. Thorpe, respondent determined that $2,775, $2,150, and $1,800 paid to Mr. Thorpe as advance travel allowances for the years 1990, 1991, and

1992, respectively, must be included in Mr. and Mrs. Thorpe's income for the years in issue. Respondent also determined that $1,150 paid to Eugene Thorpe in 1990 must be included in Mr. and Mrs. Thorpe's income. Petitioners offered no evidence at trial either to prove that these amounts were in fact included in income or to justify their failure to include the amounts in income. Moreover, petitioners did not argue on brief that such amounts were excludable from gross income. We, therefore, sustain respondent's determination.

## Accuracy-related Penalty

Respondent determined that ETCO and Mr. and Mrs. Thorpe are liable for accuracy-related penalties under section 6662. Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to one or more of the items set forth in section 6662(b). Respondent asserts that the entire amount of each underpayment in issue was due to petitioners' negligence or disregard of rules or regulations. Sec. 6662(b)(1).

Negligence has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determinations are presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Reasonable reliance

upon an expert opinion, asserted in good faith, can shield a taxpayer from penalties for negligence or disregard under section 6662. <u>Glick v. Commissioner</u>, T.C. Memo. 1997-65; see also <u>United States v. Boyle</u>, 469 U.S. 241, 250 (1985); <u>Collins v. Commissioner</u>, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. <u>Dister v. Commissioner</u>, T.C. Memo. 1987-217. However, when a taxpayer claims reliance on an accountant, the taxpayer must establish that the correct information was provided to the accountant and that the item was incorrectly claimed as a result of the accountant's error. <u>Ma-Tran Corp. v. Commissioner</u>, 70 T.C. 158, 173 (1978).

Although petitioners argue that they relied on the advice of Mr. Buck, petitioners have not established that they provided Mr. Buck with correct information or that they received guidance from Mr. Buck as to the propriety of ETCO's deductions. Therefore, we hold that ETCO and Mr. and Mrs. Thorpe are liable for the accuracy-related penalties.

<u>Decisions will be entered under Rule 155</u>.