*502 OPINION.
Siefkin :
The principal point in controversy is the March 1, 1913, value of patents owned and in use on such date and in 1920. Two experts, whose qualifications lend weight to their opinion, testified that they were worth at least $1,500,000. Their testimony is based upon and supported by the nature of the patents,, the extent of advancement in the arts by the inventions covered, the secure position attained by petitioner in the manufacture of such machinery diie to the protection afforded by the patents, the growth and financial history of petitioner’s development to the basic date as well as the future prospects at that time. Their analysis and conclusion, as well as the facts from which they drew, were unshaken by cross-examination and are without contradiction in the record. Our finding has been made accordingly. Petitioner claims and is entitled to exhaustion upon that value for the year in question. The 1920 annual deduction will be recomputed by dividing such basic value by the average remaining life of the patents on March 1, 1913, in accordance with the method prescribed in Union Metal Manufacturing Co., 4 B. T. A. 287; Deltox Grass Rug Co., 7 B. T. A. 811.
The contention by respondent that invested capital for 1920 should be reduced on account of inadequate depreciation deductions for prior years on patents, such deductions being based on the March 1, 1913, value rather than cost, is erroneous and has been rejected by this Board. See Entress Brick Co., 9 B. T. A. 588; North Iowa *503 Brick & Tile Co., 10 B. T. A. 1290; McAlester-Edwards Coal Co., 10 B. T. A. 1368.
2-a. Invested capital lor 1920 has been reduced by the proration of 1919 taxes, and additional taxes for the years 1914 to 1918, inclusive. Petitioner contends that such reduction is erroneous to the extent that the taxes for prior years were excessive. In view of the .inadequate depreciation deductions in prior years, we are persuaded that such taxes were excessive. We have jurisdiction to determine ,the taxes for prior years for the purpose of determining the correct invested capital for the year in question. Section 272 (g), Act of 1928; Cornelius Cotton Mills, 4 B. T. A. 265. It follows that we are in a position to correct the error unless the statute of limitations has run against the petitioner barring recovery of excess payments and their consequent restoration to invested capital. Section 284 of the Revenue Act of 1926 provides:
*******
(c) If the invested capital of a taxpayer is decreased by the Commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that there has been an overpayment of income, war-profits, or excess-profits taxes in any tfl-evious year or years, then the amount of such overpayment shall be credited or refunded, without the filing of a claim therefor, notwithstanding the period of limitation provided for in subdivision (b) or (g) has expired.
# * * * * * *
Manifestly, under this section petitioner is entitled to recover the excess taxes paid in prior .years due to its failure to take adequate depreciation deductions. Maritime Securities Co., 2 B. T. A. 188. The amounts of the overpayments constitute valid existing claims against the Government, and, like any other error in tax computation which remains subject to adjustment, should be corrected for invested capital purposes.
2-b. Petitioner claims that state and county warrants were erroneously excluded from invested capital as inadmissibles. That such warrants are of the kind of assets generally falling within the category of inadmissibles is admitted. The fact that such warrants were acquired not by the investment of funds but in payment for goods sold, the income from which sales were reported and taxed, is the basis urged for taking them out of their general class.
The contention is not persuasive. Invested capital is a statutory concept. The definitions enacted by Congress must be strictly construed. Assets are classified by definition without regard to the manner of their acquisition. Manifestly, the primary purpose of Congress concerning inadmissibles was to exclude capital invested in assets not productive of taxable income from invested capital. Bearing in mind this purpose, we are unable to perceive any reason for *504 lifting the assets in question out of their defined classification. Ihe fact that they were acquired in exchange for goods or in liquidation of a liability does not prevent them from being considered as property representing an investment. Nor does the fact that taxable income was realized on the exchange change the essential nature of the assets received. Furthermore, we have no assurance that the warrants were not held as an investment, as we are without evidence showing the length of the time they were held.
In support of its contention petitioner quotes from article 847 of Regulations 45 as follows:
Real or personal property taken by a corporation in payment or satisfaction of a debt, or property received in exchange for other property, will be an admissible asset at its fair market value upon receipt.
We confess inability to see the pertinency of the excerpt to the subject matter under discussion. As a general proposition such regulation seems sound. It contains no hint that it was intended to convert inadmissible assets into admissibles merely by reason of their being received in an exchange. Respondent is sustained upon this point?
3-a. Petitioner claims that the closing inventory should be reduced because 28.2 per cent of the 225 per cent overhead rate used in the computation represented costs termed “ administration and office drafting,” which it is urged have no place in inventory. The record contains insufficient evidence for us to determine that all of the items should be excluded from inventory as claimed. For instance, the item “ officers’ salaries ” is not shown to have been paid to officers engaged only in nonproduction. Nor is there any evidence showing that a portion of the item “ drafting ” should not be allocated to the cost of production of goods sold. Accordingly, we are unable to say that none of the said 28.2 per cent did not belong in inventory, and, since there was no attempt to establish amounts or percentages due to the several classes of expenses, taken separately, we must deny r,he grouped claim.
The 28.2 per cent of the total overhead rate due to allowance in such rate for freight on goods received is a duplication in the inventory, and deduction amounting to one-half of $50,103.36 should be made accordingly.
3-b. In like manner the record clearly established that $40,671.41, the cost of production supplies, was twice included, as a specific item and in the overhead rate. Closing inventory should be reduced by that amount.
At the hearing counsel for the respondent raised a question as to the opening inventory, and developed the fact that such inventory had been taken on a different' basis than the one used in the closing *505 inventory. Counsel for the petitioner suggested in explanation that taxpayers were permitted, during 1920, to change the basis of inventorying. No further testimony was adduced upon the point.
We think, in view of the pleading, no question concerning opening inventory is in issue. The petition, so far as germane, alleges:
(f) Respondent erred in failing to allow petitioner to deduct from its 1920 closing inventory the sum of §50,103.36. (Accompanied by a statement of supporting facts.)
(g) Tlie respondent erred in failing to allow petitioner to deduct from its 1920 closing inventory the further sum of §40,671.41. (Likewise supported by a statement of facts.)
These allegations were separately denied generally in the following form:
(h) Denies the allegations contained in subparagraph 5 of the second amended petition.
No motion was made to amend the answer to place the question raised in issue.
It is, of course, true that the effect of inventory on taxable income depends upon two factors, i. e., opening and closing inventory. It does not follow, however, that one of such factors alone may not be placed at issue. In the pleading petitioner questions but one — the closing inventory. So far as his answer indicates, respondent was content to confine the contest to the same single factor. An analogous case would be presented where a taxpayer alleged error in the rate of depreciation allowed on a building, and respondent countered with a general denial. In such case, we would consider only the useful life, which is determinative of the rate, as being at issue. The parties, having raised no question as to the cost or other basis, the other factor essential to computing the correct depreciation deduction, we would have no reason to question agreement by the parties upon that score. The same is true of the factor of closing inventory in the case at bar. It is elementary that the function of pleading is to confine the issues, and that the only way to enlarge upon the issues is to amend the pleading.
(4) This question is settled by stipulation, which will be given due consideration in the recomputation.
(5) The accrual of $6,861.40, representing petitioner’s share of the 1920 earnings of the firm of Beck & Babb, as an item of income in 1920, is not questioned by petitioner. United States v. Anderson, 269 U. S. 422. By the same token petitioner’s share of 1919 earnings of that firm, or $4,700, accrued in 1919 income and should have been excluded from 1920 income.
(6) We have found as a fact that no deductions were claimed on account of any of the items contained in the list set out in our find *506 ings of fact, and now alleged to be deductible as expense. We can not assume that items numbered 1 and 2, therein, though trivial, were expense items. Likewise, we have no assurance that item No. 3 should not have been and/or was not included in inventory. The exact nature of the commercial reports received from R. G. Dun is not disclosed and we can not be expected to know, as a matter of common knowledge, that all commercial reports published by that firm have no value beyond the current year. The membership fee in the traffic league, the items of advertising and rent, and salary paid are deductible, as is the liability for printing and office supplies. The remaining items we must deny for lack of evidence.
Another list representing commissions paid or purchases made was introduced in evidence. Such list gives only the dates of the several accounts, the name of the creditor, the amount of the liability, the number and page of the journal from which they were taken. No explanatory evidence was adduced concerning any of the items. Accepting the testimony as to what the accounts represented, we can not say that none of the purchases made were for capital items. The opinion of a witness that all the items were expense items is a conclusion of law, so far as purchases made are concerned, which we can not accept. Since we can not segregate the items, the claim is denied in toto.
(7) The $3,000 architect’s fees for plans for a new office building contemplated early in 1920, which project was definitely abandoned within the year, is an allowable deduction for 1920. Continental Trust Co., 7 B. T. A. 539; Murphy Transfer & Storage Co., 7 B. T. A. 1148. This amount was included in 1920 by being capitalized in the real estate account. Respondent has again added it to income. Adjustment will be made in income to correct such duplication, in addition to allowance of deduction.

Judgment will be entered under Rule 50.