1240

FRANCES SILBERMAN, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47886, 47887, 47888.    Filed September 22, 1954.

*N. H. Sirota, Esq.*, and *I. Frederick Shotkin, Esq.*, for the petitioners.
*Robert J. Cowan, Esq.*, for the respondent.

---

[1] Proceedings of petitioners Samuel Silberman, Docket No. 47887, and Joseph Silberman, Docket No. 47888, are consolidated herewith.

1244

OPINION.

FISHER, *Judge:* We are convinced that out of the total amount of $37,500 which Joseph Silberman paid to Harry Rothman pursuant to their agreement of January 10, 1944, the sum of $14,375 (being the excess over $23,125 representing the book value of Rothman's interest in the partnership known as Tissue Products Company) was paid in consideration of Rothman's agreement not to compete with Silberman and his assigns for a period of 3 years from January 10, 1944. We have so found as a fact on the basis of our analysis of the record as set forth below.

Joseph Silberman testified that said sum of $14,375 was paid solely for the agreement not to compete. Our observation was to the effect that he was a reliable witness. Perhaps of greater significance is the fact that the surrounding circumstances support his testimony.

We think it clear that Rothman's interest in the business had no goodwill value. Tissue Products Company was in the business of packing and converting private imprint tissues which it sold to customers such as drug stores for retail resale. The business was not in competition with large manufacturers of "name brand" facial tissues. Its main selling point was that it printed the name of its customer on the box, so that the retail purchaser, in turn, had the feeling that the item purchased was the retailer's own brand of tissues. Prices were cheaper than those of the large manufacturers, and the name of the retailer was printed on the box even though his purchases were in relatively small quantities. Tissue Products Company had no brand name of its own, and did not go in for extensive advertising.

During the war period, the significant problem for Tissue Products Company was to obtain a supply of tissue, because there was a shortage of tissue due to the fact that National Production Authority had curtailed its use. Both Rothman and Joseph Silberman were fortunate enough to be friendly with an executive of the business which was

their source of supply. They received an allocation of supplies, but could have sold much more facial tissue if they had been able to get more.

During periods when there was no shortage of tissue, the focus was upon sales. There were several concerns competing in the same field. While the main selling point was the printing of the customer's name on the box, the sales depended upon continuing personal contact by salesmen, including the partners. Rothman, in addition to salesmen, handled sales while he was a partner, Joseph Silberman devoting most of his time to inside work, including packing and converting. Sales would not have been made without direct personal contact. The name of the business had no sale significance. Customers' lists had no importance, and anyone in the same type of business could readily have obtained a list of prospects from the telephone book.

The earnings of the business for the period leading up to the sale of Rothman's interest are not suggestive of any abnormal profits. On the contrary, we think the record clearly demonstrates that the earnings of the business are attributable to the personal services of the partners and paid employees, together with a very moderate return on investment.

Upon the basis of the foregoing, we find no goodwill value attributable to Rothman's interest. See *Estate of Robert R. Gannon*, 21 T. C. 1073. Respondent's argument to the contrary is largely based upon the fact that, in connection with the Rothman transaction, a "Good Will" account was opened on the books in the amount of $14,375, which was the same amount as that which petitioners claim was paid for the covenant not to compete. Joseph Silberman testified that he had not known that the item was so set up on the books, and had given no instructions for such an entry. An experienced accountant (not the one who had made the entry) testified, in effect, that some balancing debit entry was necessary to offset the entry of the liability to Rothman, and that he would have entered it as "good will" for lack of a better name, even though he knew it was actually for a covenant not to compete. He stated that he had never heard of an account entitled "covenant not to compete." There is nothing in the record to establish any recognized accounting practice in the above respect, but since we find that the underlying facts not only negative goodwill, but establish that the consideration was for the covenant not to compete, we hold that the naming or misnaming of the account is not determinative to the contrary.

We may add that in prior transactions in which interests in the same business were acquired or disposed of, no value was attributed to goodwill.

The affirmative reasons supporting Joseph Silberman's insistence upon a covenant not to compete are clear and convincing. Without

such a covenant, Rothman would have been in a position, during the period of shortage of tissue, to cut into Silberman's source of supply, thereby reducing the latter's saleable product. During other periods, Rothman could readily have taken away a substantial amount of Silberman's sales by contacting the same customers. We are convinced that Silberman would have been foolhardy if he had not insisted upon such a covenant.

Absent goodwill, we find nothing in the record which would require us to draw any inference to the effect that Joseph Silberman's testimony was not to be believed. There is nothing to indicate that the value of the assets of the business was in excess of book value. As already indicated, the average earnings of the partners were not such as to suggest that any intangible value was attached to the business as such. The nature of the business was substantially one of personal service. At the same time, Rothman was yielding up an opportunity either to continue as a partner in a gainful occupation, or to compete with it, and the exaction for a 3-year covenant not to compete of an amount roughly approximating, but totaling less than, what he might have expected to earn from such business during such period is hardly to be classified as unusual or unreasonable.

Under all of the circumstances, we think that petitioner has established a severable consideration which he paid for the covenant not to compete, for the benefit of himself and his assigns, and that he and his assigns are entitled to amortize the amount of the consideration so paid ratably over the period of the covenant. We find that the principles outlined in *Christenson Machine Co.*, 18 B. T. A. 256 (see concurrence of Court of Claims, *Christenson Machine Co.* v. *United States*, 50 F. 2d 282) are applicable. See also *Gazette Telegraph Co.*, 19 T. C. 692, affd. (C. A. 10) 209 F. 2d 926. The deduction allocable to the partnership for the year 1946 is therefore $4,791.67. The shares of the partners may be adjusted in accordance with the partnership agreement.

The actual deduction taken by the partnership in its return for 1946 was $12,000. This was apparently based upon the theory that since paragraph TENTH (a) of the agreement of January 10, 1944, between Joseph Silberman and Rothman provided that if Rothman actually competed at any time prior to May 31, 1946, he would return the sum of $12,000—the allowable deduction for the covenant did not accrue until that date—but upon that date, in the absence of such competition, Rothman's liability for the return of the particular amount ceased, and the right to the deduction of $12,000 accrued. This view was not urged in the briefs filed on behalf of petitioners, who, as indicated in the briefs, appear now to accept the principle of ratable amortization. Respondent also agrees with the applica-

bility of the principle of ratable amortization, assuming that a severable consideration for a covenant not to compete for a limited period is established. In all events, we think the principle is well established and we limit the deduction accordingly. See *Christenson Machine Co., supra.* We are not called upon in this case to determine what the tax consequences would have been if Rothman had actually repaid $12,000.

Finally, we point out that the very fact that the terms of the agreement of January 10, 1944, required Rothman to return $12,000 of the contract price if he had competed prior to May 31, 1946, is strong corroboration of the intention of the parties that a substantial amount of the consideration provided in the contract was for the covenant not to compete. While we have determined that the consideration for the covenant was $14,375, the difference between that amount and $12,000 appears to be explained by the fact that the covenant ran until January 10, 1947.

*Decisions will be entered under Rule 50.*