T.C. Memo. 1999-358


UNITED STATES TAX COURT


JOHN H. MINER AND HOLLY K. MINER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21663-96.                    Filed October 26, 1999.


<u>Hubert E. Kelly</u>, for petitioners.

<u>John W. Duncan</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined deficiencies in

petitioners' income tax and additions to tax as follows:

| | | Additions to tax | | | Penalty |
| | | Sec. | Sec. | Sec. | Sec. |
| <u>Year</u> | <u>Deficiency</u> | <u>6651(a)(1)</u> | <u>6653(a)(1)</u> | <u>6654</u> | <u>6662(a)</u> |
| 1988 | $13,717 | $3,207 | $2,034 | $1,282 | – |
| 1989 | 8,428 | – | – | 364 | $4,167 |
| 1991 | 14,586 | 3,306 | – | – | 2,917 |

Petitioners' corporation, Cost Less Auto Parts, Inc. (Cost Less), paid $175,000 to a shareholder (Leonard Jasiak) to buy his Cost Less stock. Around that time, Jasiak promised (for no consideration) that he would not compete against Cost Less.

The issues for decision are:[1]

1. Whether the fact that Jasiak voluntarily promised not to compete against Cost Less entitles Cost Less to amortize any of its payment for Jasiak's stock. We hold that it does not.

2. Whether Cost Less has shown that a $10,000 reduction in its ending inventory for each year in issue is necessary to clearly reflect its income. We hold that it has not.

3. Whether Cost Less or petitioners may deduct expenses for the business use of petitioners' vehicle or miscellaneous expenses that petitioner paid on behalf of Cost Less. We hold that they may not.

---

[1] Petitioners concede that, if there are deficiencies in income tax for 1988 and 1991, they are liable for the addition to tax under to sec. 6651(a)(1) for those years.

Respondent determined that petitioners are liable for the addition to tax for failure to pay estimated tax under sec. 6654 for 1988 and 1989. We lack jurisdiction to decide this issue if petitioners filed income tax returns for years in which the addition is asserted. See sec. 6665(b)(2); Meyer v. Commissioner, 97 T.C. 555, 562 (1991); Fujita v. Commissioner, T.C. Memo. 1999-164; Cherry v. Commissioner, T.C. Memo. 1998-360; Reese v. Commissioner, T.C. Memo. 1997-346. Petitioners filed income tax returns for those years. Thus, we lack jurisdiction to decide whether petitioners are liable for the addition to tax under sec. 6654 for 1988 and 1989. Sec. 6665(b)(2).

4.   Whether petitioners are liable for the addition to tax or penalty for negligence for 1988, 1989, and 1991.  We hold that they are not.

Section references are to the Internal Revenue Code as amended.  Unless otherwise specified, Rule references are to the Tax Court Rules of Practice and Procedure.  References to petitioner are to John H. Miner.

## I.  FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

### A.   Petitioners

Petitioners are married and lived in Tucson, Arizona, when they filed their petition in this case.

### B.   Cost Less Auto Parts, Inc.

#### 1.   Formation

Leonard Jasiak (Jasiak) and petitioner organized Cost Less Auto Parts, Inc. (Cost Less), in 1974.  Petitioners owned 50 percent of the stock, and Jasiak and his wife owned the other 50 percent[2] from 1974 to the time Jasiak sold his shares to Cost Less.  Cost Less was an S corporation under section 1361 during the years in issue.

---

[2] At a date not stated in the record, Jasiak acquired his wife's interest so that he owned a 50-percent interest in Cost Less.

## 2. Operation

Cost Less buys and sells new and used auto parts in Tucson. It has one place of business.

Jasiak and petitioner ran Cost Less. Jasiak was the general manager. He ordered and sold parts and supervised employees. He knew the business very well.

The auto parts business in Tucson was highly competitive during the years in issue. Cost Less had about 30 competitors within a 5-mile radius during the years in issue, including auto parts stores, new car dealerships, salvage yards, discount stores, drug stores, and grocery stores.

Jasiak started another auto parts store in 1975 or 1976, operated it about 1-1/2 years, and then closed it.

## 3. Sale of Jasiak's Cost Less Stock

In 1986, Jasiak decided that he wanted to retire and sell his stock to Cost Less. Jasiak intended to leave Tucson and not to compete with Cost Less. Jasiak orally promised petitioner that he would not compete with Cost Less. Jasiak and petitioner never discussed whether Cost Less would make any payment to Jasiak in exchange for Jasiak's promise not to compete.

Petitioner offered to have Cost Less pay Jasiak book value for his stock.[3] Jasiak wanted more than book value. They

___

[3] The record does not show how much petitioner initially offered Jasiak for his stock.

finally agreed that Cost Less would pay $175,000 for Jasiak's stock. Jasiak and petitioner did not discuss whether the payment to Jasiak was for a covenant not to compete.

Jasiak and petitioner went to Raymond Douglas Zirkle (Zirkle), Cost Less' lawyer. Zirkle prepared a draft agreement that included a covenant not to compete. Jasiak objected to the fact that Zirkle included a covenant not to compete in the draft agreement because he had already promised petitioner that he would not compete. Jasiak thought petitioner should have been satisfied with his promise that he would not compete. Jasiak refused to sign the agreement if it included a covenant not to compete.

Petitioner and Jasiak told Zirkle to delete the covenant not to compete from the written agreement. On December 24, 1986, Cost Less and Jasiak signed a written agreement which stated that Cost Less agreed to buy all of Jasiak's Cost Less stock for $35 per share for his 5,000 shares, for a total of $175,000. Cost Less agreed to pay Jasiak $50,000 at closing, and the $125,000 balance at the rate of $3,100 per month beginning January 1, 1987, until paid. The written agreement did not include a covenant not to compete. The written agreement states that it supersedes any "pre-existing agreements and understandings between the parties relating to the subject matter hereof, and may not be modified except in writing executed by both parties".

Jasiak and Cost Less amended the agreement in writing on February 13, 1987, to prohibit Cost Less from prepaying any of the balance due on the amount Cost Less owed Jasiak for his stock and to provide a security interest for the amount Cost Less owed Jasiak.

Jasiak did not compete with Cost Less after 1986.

4. Inventory

Cost Less had about 75,000 items in inventory during the years in issue. It kept records of its inventory on a computer with an inventory control software program. During the years in issue, as Cost Less received new inventory, its employees entered the cost of each new item into its computer program. When Cost Less employees entered the cost of new inventory items, the computer program automatically changed the amount stated as the cost of identical items remaining in inventory. For example, if Cost Less had a water pump in inventory which had cost $20, and Cost Less obtained another identical water pump for $30, the inventory program would show the cost of both water pumps as $30. The Cost Less computer program would then reduce inventory by $30 when the first water pump was sold.

5. Transportation

Cost Less had two pickup trucks to pick up and deliver parts. Petitioner also sometimes used his 1979 van for Cost Less errands. Less than a year before trial and at least 6 years

after the last year in issue, petitioner prepared a document from his own memory in which he estimated the number of miles that he drove his van for business in 1988, 1989, and 1991.

C.    <u>Income Tax Returns for Cost Less and Petitioners</u>

Lawrence I. Subrin (Subrin) was Cost Less' accountant during the years in issue. Subrin prepared returns for Cost Less (Forms 1120) for 1988, 1989, and 1991. Cost Less filed its Federal income tax returns for 1988 on September 1, 1989, for 1989 on September 19, 1990, and for 1991 on September 17, 1992. About November 7, 1990, Cost Less filed an amended return for 1989 that Subrin had prepared.

In September or October 1993, petitioner asked Don Bailey (Bailey), a certified public accountant since 1983, to review petitioners' business and personal taxes. Bailey was petitioners' accountant from then through the date of trial. Bailey has three bachelor of arts degrees, a master of business administration degree, and he has completed about half of the hours required for a master's degree in taxation.

Bailey prepared joint Federal income tax returns for petitioners for the years in issue (1988, 1989, and 1991). Petitioners filed them on November 5, 1993.

Bailey asked petitioner about the $175,000 payment to Jasiak. Bailey asked Zirkle whether there was a covenant not to compete. Petitioner and Zirkle explained the circumstances

surrounding Jasiak's sale of stock to Bailey. Bailey concluded that Cost Less was entitled to amortize the full $175,000 over a 7-year period, on the assumption that Cost Less paid $175,000 for a covenant not to compete and nothing for the stock. Bailey prepared amended returns for Cost Less in which Cost Less amortized the $175,000 over 7 years.

Petitioner told Bailey how the Cost Less inventory system worked. Petitioner estimated that Cost Less overstated its inventory by about $10,000 per year. Bailey accepted petitioner's estimate and reduced closing inventory by $10,000 on each of Cost Less' amended returns that he prepared.

Petitioner and Bailey also discussed petitioner's van use and payment of miscellaneous expenses. Petitioner did not give Bailey any incorrect information. In the amended returns Bailey prepared, Cost Less deducted $3,000 per year for petitioner's van use, and $50 per week for petitioner's payment of miscellaneous Cost Less expenses.

On December 15, 1993, Cost Less filed the amended income tax returns that Bailey prepared for 1988, 1989, and 1991. Respondent disallowed the changes Bailey made in Cost Less' amended returns.

Respondent mailed a notice of deficiency to petitioners on July 9, 1996. All of the adjustments in the notice of deficiency relate to Cost Less. Petitioners filed a petition in which they

dispute the adjustments in the notice of deficiency and claim that they overpaid income taxes by $888 for 1988, $11,247 for 1989, and $1,363 for 1991.

## II.  OPINION

### A.  Covenant Not To Compete

#### 1.  Petitioners' Contentions

Cost Less amortized over 7 years all of the $175,000 payment it made to Jasiak to buy Jasiak's stock.  Petitioners now contend that Cost Less may amortize only $165,000 of the $175,000 (i.e., the difference between $175,000 and what petitioners contend is the $10,000 book value of Jasiak's Cost Less stock).

In the alternative, petitioners contend that Cost Less may amortize amounts based on the value of the covenant not to compete.  Petitioners point out that Jasiak orally promised that he would not compete against Cost Less around the time Cost Less agreed to buy Jasiak's stock.  Petitioners contend that the amounts paid by Cost Less to Jasiak were consideration for Jasiak's oral promise not to compete.

#### 2.  Analysis

A taxpayer may amortize a covenant not to compete from a departing shareholder if the parties intended that some of the payment from the business to the departing shareholder was for the covenant, and the amount agreed to be paid for the covenant reflected economic reality.  See Patterson v. Commissioner, 810

F.2d 562, 571 (6th Cir. 1987), affg. T.C. Memo. 1985-53; Better Beverages, Inc. v. United States, 619 F.2d 424, 428 n.5 (5th Cir. 1980); Throndson v. Commissioner, 457 F.2d 1022, 1024-1025 (9th Cir. 1972), affg. Schmitz v. Commissioner, 51 T.C. 306 (1968); Annabelle Candy Co. v. Commissioner, 314 F.2d 1, 8 (9th Cir. 1962), affg. T.C. Memo. 1961-170. Thus, petitioner must prove that Jasiak and petitioner intended for some of the payment to be for a covenant not to compete and that the amount intended to be paid reflected economic reality. As discussed next, we conclude that petitioner proved neither point.

      a.   Whether Jasiak and Cost Less Intended To Allocate Part of the $175,000 to Jasiak's Promise Not To Compete

Petitioners contend that Jasiak and Cost Less intended to allocate part of the $175,000 to his promise not to compete. We disagree. There is no credible evidence that the parties intended to allocate any of the $175,000 to Jasiak's promise not to compete. Before petitioner and Jasiak signed the agreement, Jasiak orally promised not to compete with Cost Less. They did not discuss allocating, much less did they allocate, any part of the $175,000 payment to Jasiak's promise not to compete.

In their written agreement, Jasiak and petitioner stated that Cost Less was paying $35 per share for 5,000 shares, for a total payment of $175,000. By its own terms, the agreement superseded all others and could be modified only in writing.

Petitioner and Jasiak agreed to a written change in the agreement barring prepayment and providing a security interest; this shows that they understood that changes in the agreement must be in writing.

Petitioners ask us to consider parol evidence of Jasiak's and petitioner's intent regarding payment for Jasiak's promise not to compete. Petitioners' reliance on parol evidence is unhelpful to petitioners for two reasons. First, the evidence is not credible. Petitioner testified that he intended for Jasiak's oral promise to be part of the written agreement and that he would not have agreed to Cost Less buying Jasiak's stock without Jasiak's covenant not to compete. Petitioners contend that Jasiak's testimony shows that petitioner intended that part of the $175,000 payment from Cost Less to Jasiak was for his oral promise not to compete. Jasiak testified that none of the $175,000 was for the covenant not to compete. Jasiak's testimony is consistent (and petitioner's position is inconsistent) with the written agreement and with Jasiak's and petitioner's decision to delete any references to a covenant not to compete from their written agreement. We found Jasiak's testimony to be more credible than petitioner's.

The second reason petitioners' reliance on parol evidence is unhelpful to them is that under Arizona's parol evidence rule, we do not consider parol evidence where the written agreement is

clear. Under Arizona's parol evidence rule, courts first consider parol or extrinsic evidence a party offers, and, if the written agreement is ambiguous and reasonably susceptible to the interpretation asserted by that party, the parol or extrinsic evidence is admissible to establish the intent of the parties. See Taylor v. State Farm Mut. Auto. Ins. Co., 854 P.2d 1134, 1140 (Ariz. 1993). The written agreement is inconsistent with petitioners' position that the $175,000 was paid, in part, for Jasiak's promise not to compete. It is not ambiguous or susceptible to petitioners' interpretation. Thus, we do not consider petitioner's testimony to establish the intent of the parties. See Taylor v. State Farm Mut. Auto. Ins. Co., supra.

We conclude that Cost Less may not amortize any amount for Jasiak's oral promise not to compete because the parties did not allocate or intend to allocate any amount to it. Patterson v. Commissioner, supra; Better Beverages, Inc. v. United States, supra; Annabelle Candy Co. v. Commissioner, supra; Peterson Mach. Tool, Inc. v. Commissioner, 79 T.C. 72, 81 (1982), affd. 54 AFTR 2d 84-5407, 84-2 USTC par. 9885 (10th Cir. 1984); Major v. Commissioner, 76 T.C. 239, 247 (1981); Lucas v. Commissioner, 58 T.C. 1022, 1032 (1972).

      b.   Whether There Is Evidence of the Value of Jasiak's Promise Not To Compete

Petitioners contend that Jasiak's oral promise not to compete was valuable. Petitioners contend that the fact that

Jasiak knew the auto parts business well and that he started another auto parts store in 1975, which was open for about 1-1/2 years, shows that the covenant not to compete had value. Petitioners contend that the value of the covenant not to compete is $175,000 less the book value of Cost Less which petitioners contend is $10,000.

We disagree. We believe Jasiak's oral promise to Cost Less not to compete had little or no value. The fact that Jasiak opened another auto parts store in 1975, which was open 1-1/2 years, does little to show he was a competitive threat to Cost Less when he wanted to retire in 1986. The auto parts business was highly competitive. It is not clear whether his oral promise included a specific duration or geographic area. His oral promise provided for no consideration. Thus, it may not have been enforceable. See Amex Distrib. Co. v. Mascari, 724 P.2d 596, 601 (Ariz. Ct. App. 1986); American Credit Bureau, Inc. v. Carter, 462 P.2d 838, 840 (Ariz. Ct. App. 1969).

If we knew the fair market value of Jasiak's Cost Less stock, and we knew that the $175,000 payment was intended to be made for both the stock and a covenant not to compete, then, as petitioners request, we might be able to derive the value of the covenant. See, e.g., Annabelle Candy Co. v. Commissioner, supra at 7-8; Beaver Bolt, Inc. v. Commissioner, T.C. Memo. 1995-549; Standard Lumber & Hardware Co. v. Commissioner, T.C. Memo. 1958-

159. But we cannot do that here because Jasiak and petitioner intended there to be no payment for Jasiak's promise not to compete.

Petitioner did not offer any evidence to show the fair market value of the stock. Instead, petitioner contends that $10,000 is the book value of Jasiak's Cost Less stock. We disagree that it is appropriate to use $10,000 as the fair market value of Jasiak's Cost Less stock. First, Jasiak rejected petitioner's offer to sell the stock for book value, which suggests its fair market value was higher. Second, petitioners offered no convincing evidence that the book value of Cost Less stock was $10,000. Bailey testified that the book value and par value of Cost Less were both "about" $1 per share, for a total of $10,000. Petitioners offered no records or other corroboration for this point. Bailey's explanation how he computed book value was unconvincing. He testified that par value[4] was $1 per share, and that this was also its book value.[5] We are not convinced from Bailey's testimony that the book value of a share of Cost

---

[4] Par value is an arbitrary value assigned to a share of stock by the corporation's charter. See Kohler, Kohler's Dictionary for Accountants 374 (5th ed. 1983); Nickerson, Accounting Handbook for Nonaccountants 176 (1975).

[5] The book value of a share of common stock is equal to assets of the corporation less liabilities divided by the number of outstanding shares. See Kohler, supra at 71.

Less stock is equal to its par value, or that the fair market value of Jasiak's Cost Less stock is $10,000 here.

We conclude that there is no credible evidence that Jasiak's oral promise not to compete had any value.

### c. Whether To Estimate an Amount To Allocate to Jasiak's Promise Not To Compete

Petitioners contend that we should apply the Cohan rule (enunciated in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930)), to estimate an amount for Jasiak's promise not to compete if we decide that Cost Less may not amortize $165,000. We disagree. We may estimate an amount under Cohan if the taxpayer is entitled to deduct some amount. See id. Here, as discussed above at paragraph II-A-2-a, Cost Less may not deduct any amount for Jasiak's promise not to compete because Jasiak and petitioner intended to allocate none of the $175,000 payment to Jasiak's promise. Thus, Cohan does not apply.

### d. Cases Cited by Petitioners

Petitioners contend that this case is indistinguishable from Standard Lumber & Hardware Co. v. Commissioner, supra, in which we permitted the taxpayer to amortize the cost of a covenant not to compete. Petitioners contend that Standard Lumber & Hardware Co. supports the proposition that Cost Less may allocate part of the $175,000 payment to Jasiak to a covenant not to compete despite the terms of the written agreement of sale. Petitioners also contend that Standard Lumber & Hardware Co. supports the

proposition that the value of (and amount paid for) the stock in Cost Less is its book value, leaving the rest of the $175,000 payment from Cost Less to Jasiak to be allocated to the covenant not to compete. We disagree.

In Standard Lumber & Hardware Co., the partners had a written partnership agreement which stated that the remaining partners would pay a withdrawing partner an amount equal to the book value ($32,587.22) of his partnership interest. The partners had an oral agreement that any departing partner would not compete against the partnership. The partners signed a dissolution agreement. The remaining partners paid the withdrawing partner $70,000 by check. The dissolution agreement and check said that the $70,000 was for the withdrawing partner's interest in the partnership. Neither the dissolution agreement nor the certified check mentioned a covenant not to compete. The remaining partners continued to operate the business and did not amortize the covenant. A successor corporation filed an amended return and amortized part of the $70,000 as the cost of the covenant. We found that $37,412.78 (the difference between $32,587.22 and $70,000) was intended to be paid for the covenant not to compete.

Here, in contrast, Jasiak specifically rejected any payment for his promise not to compete, and he specifically rejected being paid for his stock based on the book value of his stock.

Thus, <u>Standard Lumber & Hardware Co.</u> is significantly different from this case.

Petitioners cite <u>Patterson v. Commissioner</u>, 810 F.2d at 571, for the proposition that a covenant not to compete has value if it has economic reality. Petitioners' reliance on <u>Patterson</u> is misplaced; <u>Patterson</u> is in accord with respondent's position here. We held in <u>Patterson</u> that the taxpayer could not amortize any amount because there was a written agreement in which all of the payment to the withdrawing party was specifically for stock and goodwill and none was for a covenant not to compete. See <u>id.</u> at 573. This was so even though there was a covenant not to compete which may have had some value. Like the taxpayer in <u>Patterson</u>, petitioner and Jasiak signed an agreement which said all of Cost Less' payment to Jasiak was for stock. Thus, whether the covenant not to compete had independent value does not alter the outcome of this case.

In none of the other cases petitioners cite was there a written agreement specifying that all of the payment to the withdrawing party was for stock. See <u>Schulz v. Commissioner</u>, 294 F.2d 52, 55 (9th Cir. 1961), affg. 34 T.C. 235 (1960); <u>O'Dell & Co. v. Commissioner</u>, 61 T.C. 461, 467 (1974); <u>United Fin. & Thrift Corp. v. Commissioner</u>, 31 T.C. 278, 285-286 (1958), affd. 282 F.2d 919 (4th Cir. 1960); <u>Silberman v. Commissioner</u>, 22 T.C. 1240 (1954); <u>Michaels v. Commissioner</u>, 12 T.C. 17, 19 (1949);

B.T. Babbitt, Inc. v. Commissioner, 32 B.T.A. 693, 696 (1935);

Fletcher v. Commissioner, T.C. Memo. 1965-273.

    3.    Conclusion

    We conclude that petitioner may not amortize any of Cost

Less' $175,000 payment for Jasiak's oral promise not to compete

because petitioner and Jasiak did not intend to allocate any of

the payment to the promise, and petitioner has not proven that

Jasiak's promise had value.

B.    Inventory Adjustment

    Petitioners contend that Cost Less may reduce its ending

inventory by $10,000 for each year in issue because, according to

petitioners' estimate, Cost Less' inventory software overstated

its ending inventory by that amount.

    We have long held that a taxpayer may adjust inventories to

correctly reflect income.  Elm City Nursery Co. v. Commissioner,

6 B.T.A. 89 (1927); Baumann Rubber Co. v. Commissioner, 4 B.T.A.

671 (1926).  Petitioners do not explain how they computed the

$10,000 amount.  Petitioners appear to defend the $10,000 amount

because the consumer price index (CPI) increased .185 percent on

all items from January 1, 1988, to December 31, 1991.

However, they did not show (1) how many of the 75,000 parts had

price increases in any year; (2) how many parts remained in

inventory at the end of the year for which the computer program

increased costs; (3) the amount of price increases; (4) what

happens if inventory prices decrease; or (5) whether Cost Less used first in first out, or last in first out, or any other method.

Petitioners contend that respondent conceded that they overstated the inventory of Cost Less. We disagree. Respondent agrees that petitioners' inventory records are not accurate but not that Cost Less overstated its inventory.

Petitioners contend that we must allow Cost Less to adjust its inventory, citing Western Wheeled Scraper Co. v. Commissioner, 14 B.T.A. 496, 504 (1928). Petitioners' reliance on Western Wheeled Scraper Co. v. Commissioner, supra, is misplaced. That case holds that a taxpayer may adjust its inventory to correct clear errors. In that case, the Board of Tax Appeals allowed the taxpayer to adjust inventory for specific items and amounts which the taxpayer showed were duplicated in inventory but not for other, vague items. See id. at 504-505.

Cost Less may not reduce its ending inventory without showing the amount of the adjustment that is needed to clearly reflect income. We conclude that Cost Less may not reduce inventory by $10,000 for any of the years in issue.

C. Deduction for Van Use

Petitioner used his 1979 van for business from the early 1980's through the years in issue. Petitioners contend that Cost Less may deduct an amount based on the mileage that petitioner

estimated for business use of his van for 1988, 1989, and 1991. We disagree.

A taxpayer may not deduct costs for the use of a passenger vehicle unless the taxpayer substantiates the amount of the expense, the time and place of travel, and the business purpose of travel with adequate records or sufficient evidence corroborating the taxpayer's statement. See sec. 274(d).

Petitioners contend that section 274(d) does not apply to petitioner's van. We disagree. Section 274(d) applies to passenger automobiles and other property used as a means of transportation. See sec. 280F(d)(4)(A)(i) and (ii). A passenger automobile is any 4-wheeled vehicle (including vans) which is manufactured primarily for use on public streets, roads, and highways and is rated at 6,000 pounds gross vehicle weight or less. See sec. 280F(d)(5)(A). Petitioners have not shown that the van has a gross weight of 6,000 pounds or more. Thus, the substantiation requirements of section 274(d)(4) apply to petitioner's van.

Less than a year before trial and at least 6 years after the last year in issue, petitioner prepared a written estimate of his business mileage from memory. He did not use any records to prepare the estimate. Petitioner's testimony and written estimate of his business mileage fail to satisfy the substantiation requirements of section 274(d). See sec. 1.274-5,

Income Tax Regs. We conclude that petitioners have not met the requirements of section 274(d). See Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1235-1236 (1971); Kennelly v. Commissioner, 56 T.C. 936, 942 (1971), affd. 456 F.2d 1335 (2d Cir. 1972); Marlin v. Commissioner, 54 T.C. 560, 568 (1970); Thorpe v. Commissioner, T.C. Memo. 1998-115; Tesar v. Commissioner, T.C. Memo. 1997-207; Group Admin. Premium Servs., Inc. v. Commissioner, T.C. Memo. 1996-451. Thus, Cost Less may not deduct business use of the van in the years in issue.

D. Deduction for Miscellaneous Expenses

Ordinarily, a shareholder may not deduct a payment made on behalf of the corporation but must treat it as a loan or a capital contribution. See Deputy v. DuPont, 308 U.S. 488 (1940); Betson v. Commissioner, 802 F.2d 365, 368 (9th Cir. 1986), affg. in part, revg. in part T.C. Memo. 1984-264; Rink v. Commissioner, 51 T.C. 746, 751 (1969); see also sec. 1.263(a)-2(f), Income Tax Regs. Petitioners contend that petitioner occasionally paid for miscellaneous items such as photocopies and breakfast and lunch for Cost Less' employees and customers, and that Cost Less did not reimburse petitioner for those expenses. Petitioners contend that Cost Less may deduct $50 per week for those expenses. However, petitioners have no records to substantiate their claim that petitioner paid these amounts.

Petitioners tried to show that payments of these expenses are capital contributions to Cost Less. Bailey testified that he credited the estimated amount of the payments to petitioner's equity account in the corporation. Bailey did not say when or how he credited petitioner's equity account. Bailey did not begin doing accounting work for Cost Less until 1993, which is after the years in issue. Petitioners offered no accounting records into evidence. We are not convinced that the expenses were capital contributions to Cost Less.

The result would be no different even if petitioners had shown that the expenses were capital contributions to Cost Less. Petitioners have not substantiated the expenses or shown that those expenses were ordinary and necessary expenses of Cost Less as required under section 162. To the extent that petitioner paid for meals, petitioners have failed to show that they complied with section 274(d).

We conclude that neither Cost Less nor petitioners may deduct these amounts.

E. <u>Negligence</u>

Petitioners contend that they are not liable for the addition to tax for negligence under section 6653(a)(1) for 1988 and section 6662 for 1989 and 1991 because they relied on Bailey.

Respondent contends that petitioners may not rely on Bailey because, in retaining Bailey and following his advice,

petitioners were ignoring apparently correct advice previously provided by Subrin.  Respondent contends that petitioners may not rely on Bailey because Subrin was their accountant during the years in issue.  Respondent contends that petitioners looked for an accountant who would give the advice that resulted in the lowest tax liability.

Petitioners changed from Subrin to Bailey in 1993.  We think petitioners reasonably believed that Bailey was qualified to provide tax advice.  We conclude that they are not liable for the addition to tax for negligence.

To reflect the foregoing,

Decision will be entered
under Rule 155.